## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ARTUR ANDRADE, JULIA ANDRADE, On behalf of themselves and all others so similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC, HSBC BANK USA, N.A., AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2007-HL1,<br><br>        Defendants. | C.A. No. 1:18-cv-00385-WES-LDA |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

## I. INTRODUCTION

Plaintiffs, Artur Andrade and Julia Andrade ("Plaintiffs") bring this putative class action against Defendants, Ocwen Loan Servicing, LLC ("Ocwen") and HSBC Bank USA, National Association, as Trustee for Option One Mortgage Loan Trust 2007-HL1, Asset-Backed Certificates, Series 2007-HL1, improperly named as "HSBC Bank USA, N.A. as trustee for Option One Mortgage Loan Trust 2007-HL1" ("HSBC, as Trustee," and collectively, "Defendants"), for allegedly conducting foreclosure sales[1] of residential properties throughout the State of Rhode Island during the pendency of the Emergency Order issued by the Rhode Island Department of Business Regulation ("DBR") and in violation of R.I. Gen. Laws § 19-14.11-1. While Plaintiffs question Ocwen's licensing status to conduct these foreclosures on

---

[1] While Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23, Plaintiffs inherently concede that they "do not know the exact size or identities of the members of the class." (Compl. ¶ 43.) The allegations of the complaint fail to demonstrate that the class size extends beyond the named Plaintiffs.

behalf of HSBC, as Trustee, from April 7, 2017 through September 29, 2017, Plaintiffs present no basis for this Court to determine, as a matter of law, that Ocwen's foreclosure violated Rhode Island law. By the very terms of the Consent Order entered between Ocwen and the DBR, Ocwen fully complied with all applicable legal requirements in noticing and conducting the challenged foreclosure(s). Moreover, Plaintiffs improperly construe the requirements of Paragraph 21 of the mortgage and this Court's decision in *Martins v. Fed. Hous. Fin. Agency*, 214 F. Supp. 3d 163 (D.R.I. 2016), in a vain attempt at generating Defendants' liability. Without any other basis to challenge the foreclosure, there is no breach of contract, and accordingly, this Court should dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## II. FACT AND PROCEDURAL BACKGROUND

### A.   Plaintiffs' Mortgage, Default and Foreclosure

According to the allegations of the Class Action Complaint[2], Plaintiffs are the former owners of the subject real property located at 109-111 West Lawn Avenue, Pawtucket, Rhode Island (the "Property"). (Compl. ¶ 13.) Plaintiffs purchased the Property on December 5, 2006 via a deed recorded in the City of Pawtucket Land Evidence Records at Book 2779, Page 111. (*Id.* at ¶ 19.) On December 5, 2006, Plaintiffs executed a promissory note (the "Note") to which they promised to repay a loan in the amount of $332,500.00 to Option One Mortgage Corporation ("Option One"). (*Id.* at ¶ 20.) To secure repayment of the amounts borrowed under the Note, Plaintiffs granted a mortgage on the Property the same day to Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for Option One and Option One's successors and assigns (the "Mortgage"). (*Id.*) The Mortgage granted the "Lender" the power to

---

[2] For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the factual matters alleged are accepted as true. *See Era v. Morton Cmty. Bank*, 8 F. Supp. 3d 66, 69 (D.R.I. 2014).  The facts presented here are therefore taken directly from the Class Action Complaint (the "Complaint").

302348499v2 1010819

accelerate the mortgage loan upon the mortgagors' default and to invoke the statutory power of sale. (*Id.* at ¶¶ 21, 77.) The Mortgage was recorded in the City of Pawtucket Land Evidence Records on December 11, 2006 at Book 2779, Page 113. (*Id.* at ¶ 20.)

On November 18, 2009, MERS, as nominee for Sand Canyon Corporation f/k/a Option One, assigned the Mortgage to HSBC, as Trustee by an assignment recorded in the City of Pawtucket Land Evidence Records on November 20, 2009 at Book 3204, Page 51. (*Id.* at ¶ 22.) Following Plaintiffs' default on the Mortgage, Ocwen, as mortgage loan servicer for HSBC, as Trustee, sent Plaintiffs a notice of mortgage foreclosure sale on April 7, 2017. (*See id.* at ¶ 25.) The foreclosure sale of the Property occurred on June 1, 2017, at which HSBC, as Trustee purchased the Property for $197,450.00. (*Id.* at ¶¶ 28-29, Ex. 2.) A foreclosure deed was recorded in the Property's chain of title in the City of Pawtucket Land Evidence Records on July 12, 2017 at Book 4111, Page 192. (*Id.* at ¶ 29, Ex. 2.)

## B.    The Emergency Order Issued by the DBR and Entry of the Consent Order

On April 20, 2017, the DBR issued an Emergency Order to Ocwen and other "responding parties" under R.I. Gen. Laws § 42-35-24(c), as part of a then-ongoing investigation by certain "examining states" into Ocwen's servicing operations of residential mortgage loans. (Compl. ¶ 27, Ex. 1 at 4-5.) According to the procedural history of the Consent Order (attached as Exhibit 1 to the Complaint), previously—and prior to the issuance of the Emergency Order—certain "examining states" conducted a "Multi-State Examination of Ocwen covering the period of January 1, 2013 to February 28, 2015 in order to determine Ocwen's compliance with applicable federal and state laws and regulations, financial condition, and control and supervision of the licensed mortgage servicing operations." (*Id.*, Ex. 1 at 4.) To address the cited issues, Ocwen and state regulators, including the State of Rhode Island entered into a confidential Memorandum of

3

Understanding (the "MOU") on December 7, 2016. The MOU required Ocwen to conduct an audit and reconciliation of consumer escrow accounts. (*Id.*, Ex. 1 at 5.)

In issuing the Emergency Order, the DBR ordered, *inter alia*, "Respondents shall immediately cease and desist from any and all unlicensed activity in this State, including, without limitation, acting as a third party loan servicer." (*Id.* at ¶ 27, Ex. 1 at 5-6.) On April 25, 2017, just a few days after the issuance of the Emergency Order, Ocwen and the responding parties filed a Complaint for Judicial Review in the Providence Superior Court on April 25, 2017, captioned *Ocwen Loan Servicing, LLC et al. v. Director of R.I. Dep't of Bus. Reg.*, C.A. No. PC-2017-1862, seeking the Court's review of the Emergency Order, and specifically, questioning the DBR's ability to suspend Ocwen's Rhode Island mortgage licenses, without proper notice and an opportunity for a hearing.[3] In that action, Ocwen requested the Court stay any and all enforcement of the Emergency Order and to issue a declaration that it is invalid, null, and void. This judicial review action was voluntarily dismissed without prejudice on December 11, 2017.

The Consent Order, which set forth the terms of the agreement and settlement with the DBR, was executed on September 29, 2017. Importantly, the Consent Order included the following terms:

> 27. Subject to the condition precedent of the Respondents fulfilling any outstanding application requirements and subject to the continuing condition of the Respondents' compliance with the "Global Minimum Settlement Terms" . . . the [DBR] will vacate the denial of, reinstate and grant the Third Party Servicer Applications.
>
> 28. The Respondents acknowledge that the granting of the Rhode Island Third Party Servicer Applications in no way alters the restrictions in the Global

---

[3] This Court may properly review the pleadings and exhibits to the judicial review action. *See Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000) ("[A] court ordinarily may treat documents from prior state court adjudications as public records," and may properly review them on Rule 12(b)(6) motions).

302348499v2 1010819

Minimum Settlement Terms as to the scope of activities that can be conducted under the Third Party Loan Servicer Licenses.

(Compl., Ex. 1 at 6-7.) The Consent Order does not give any indication that Ocwen's servicing activity of approximately 6,422 loans secured by Rhode Island property was to be invalidated or void during the time period from the issuance of the Emergency Order through the entry and execution of the Consent Order. (*See generally id.*, Ex. 1) In fact, the Consent Order, by its terms, precisely states that the Consent Order is "entered into for the purpose of resolving the issues raised in the Emergency Order" and that the "Consent Order supersedes the prior Emergency Order in its entirety and any and all understandings associated herewith." (*Id.*, Ex. 1 at 7.) In other words, any question as to the licensing and servicing activity of Ocwen raised in the Emergency Order were resolved and dismissed by entry of the Consent Order so long as Ocwen complied with the Minimum Global Settlement Terms. There are no allegations in Plaintiffs' Complaint that Ocwen has not complied with that global settlement.

### III. STANDARD OF REVIEW

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Lemelson v. U.S. Bank Nat. Ass'n*, 721 F.3d 18, 21 (1st Cir. 2013) ("Dismissal for failure to state a claim is appropriate if the complaint does not set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." (internal quotation marks omitted)). In the aftermath of *Iqbal* and *Twombly*, a federal court's inquiry must first "distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)" and then second, must determine "whether the factual allegations are sufficient to support the reasonable

302348499v2 1010819

inference that the defendant is liable for the misconduct alleged." *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (internal quotation marks and citations omitted). A court's review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) requires it to "construe all factual allegations in the light most favorable to the non-moving party to determine if there exists a plausible claim upon which relief may be granted." *Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 7 (1st Cir. 2014). However, the Court is entitled to disregard those facts which have been "'conclusively contradicted by plaintiffs' concessions or otherwise.'" *Soto-Negron v. Taber Partners I*, 339 F.3d 35, 38 (1st Cir. 2003) (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir.1987)).

## IV. ARGUMENT

### A.  <u>Plaintiffs Cannot Maintain Count I as There is No Private Right of Action Under R.I. Gen. Laws 19-14.11-1</u>

This Court must dismiss Count I of Plaintiffs' Complaint, whether asserting claims on behalf of themselves or a putative class, because Title 19 does not provide Plaintiffs with a private right of action. In relevant part, § 19-14.11-1(a) states "[n]o person shall act as a third-party loan servicer, directly or indirectly, for a loan to a Rhode Island borrower without first obtaining a license under this chapter from the director, or the director's designee." Section 19-14.11-1 went into effect on January 1, 2015 under the Financial Institutions title of the Rhode Island General Laws. Within the Financial Institutions title, the General Laws provide express instruction on the enforcement of this and all other sections within Title 19:

> The director may impose an administrative assessment, as well as the penalties provided for under § 19-14-26, against any person named in an order issued under subsection (e) or, in accordance with the rules and regulations promulgated pursuant to § 19-14-30, against any person who violates, or participates in the violation of, any of the applicable provisions of this title, *or any regulation promulgated pursuant to any provisions of this title*."

R.I. Gen Laws. §19-14-23(f).

6

The Rhode Island Legislature has directed that the provisions of this particular statute—and all licensing requirements for that matter—are solely investigated and enforced by the Director of the Department of Business Regulation and prosecuted by the Rhode Island Attorney General. Indeed, the Consent Order that forms the basis of Plaintiffs' Complaint explains "[p]ursuant to R.I. Gen. Laws § 19-14-23, the [DBR] is authorized to investigate the loans and business and examine the books, accounts, papers, records, and files of licensed lenders transacting business in Rhode Island, to determine compliance with the provisions of Rhode Island law, and any rule, or regulation issued thereunder, and with any law, rule, or regulation applicable to the conduct of the licensed business." (Compl., Ex. 1 at 2.) Since its passing, no Rhode Island court—state or federal—has interpreted its provisions or requirements.

Here, Plaintiffs allege that Ocwen issued a notice of mortgagee foreclosure sale on behalf of HSBC, as Trustee, on April 7, 2017 and at a time when Ocwen was not a licensed third party servicer in Rhode Island under R.I. Gen. Laws § 19-14.11-1. (Compl. ¶¶ 58-59.) Further, Plaintiffs allege that the June 1, 2017 foreclosure sale and the recording of the foreclosure deed on July 12, 2017, not only violated the terms of the Emergency Order, but also violated § 19-14.11-1. Essentially, Plaintiffs claim that any conduct in scheduling or conducting foreclosure proceedings of the loans serviced by Ocwen from April 20, 2017 until entry of the Consent Order on September 29, 2017 constituted a violation of the statute. Plaintiffs do not, and cannot point to any authority they have or might have to seek to enforce this statute on the Defendants.

The General Assembly specifically appointed the DBR with sole authority to enforce the licensing requirements of third party loan servicers and to impose fines for violations thereof; no such authority or permission was granted to individuals in private litigation. Without an express authorization of the DBR to enforce the statute in question, Plaintiffs cannot maintain a private

302348499v2 1010819

right of action under § 19-14.1-11. Unless a statute specifically provides for a private right of action or private enforcement, the Rhode Island Supreme Court consistently refuses to infer such a right. *See Stebbins v. Wells*, 818 A.2d 711, 716 (R.I. 2003) ("When a statute 'does not plainly provide for a private cause of action [for damages], such a right cannot be inferred.'" (quoting *Bandoni v. State*, 715 A.2d 580, 584 (R.I. 1998))); *see also Callaghan v. Darlington Fabrics Corp.*, No. PC-2014-5680, 2017 R.I. Super. LEXIS 88, at *6-8 (R.I. Super. May 23, 2017) (Licht, J.) (collecting and citing numerous cases refusing to imply private right of action into statute). Moreover, "the function of prescribing remedies for [statutory] rights is a legislative responsibility [and] not a judicial task." *Cummings v. Shorey*, 761 A.2d 680, 685 (R.I. 2000).

For example, this Court has previously held that there is no private right of action for violations of § 19-14.9-12—a similar registration statute within Title 19. *See Laccinole v. Twin Oaks Software Dev., Inc.*, C.A. No. 13-cv-716-ML, 2014 U.S. Dist. LEXIS 73879, at *21-23 (D.R.I. May 30, 2014), *aff'd*, No. 14–1705, slip. op. at 1 (1st Cir. Apr. 27, 2015). In *Laccinole*, the plaintiff alleged a host of consumer protection violations against the defendant (the dues processing firm used by his fitness club), including, *inter alia*, claims that the entity was not properly registered as a "debt collector" under the Rhode Island Fair Debt Collection Practices Act ("RI-FDCPA"). *Id.* at *1. In reviewing the statutory framework of the RI-FDCPA, the Court aptly noted that a debt collector's failure to register as such with the DBR does not give rise to a private right of action; instead, the Court noted the statute provides only for fines and/or imprisonment. *Id.* at *22.

Because § 19-14.11-1 does not expressly provide for a private right of action, and because § 19-14-23 clarifies that penalties for violations of any regulation promulgated pursuant to any provision of Title 19 will be assessed and enforced by the Director of the DBR, Plaintiffs

8

cannot maintain Count I of the Complaint. Accordingly, this Court must dismiss this cause of action with prejudice.

**B.** **The Consent Order Resolves Any Questions of Licensing Status During the Putative Class Period, and Therefore, Defendants Fully Complied With Applicable Law**

Plaintiffs resort to Count II of the Complaint in an attempt to circumvent the statutory pitfalls in maintaining a private action under Count I for violations of Rhode Island's licensing regulations, but the Consent Order ameliorates any possible breach of contract action here. Under Count II, Plaintiffs seek to hold the Defendants liable for breach of contract in failing to comply with certain conditions precedent on exercise of the statutory power of sale. Plaintiffs argue that because the mortgage contract allegedly requires strict compliance with the provisions of Paragraph 21, the alleged violations of § 19-14.11-1 constitute the necessary breach of those terms, and thus, now void the foreclosure sale. (*See* Compl. ¶¶ 75-82). Plaintiffs are again wrong.

Plaintiffs rely upon this Court's decision of *Martins*, 214 F. Supp. 3d 163. As this Court is familiar, *Martins* stands for the proposition that the notice requirements found in the general paragraph 22 language of the standard-form mortgage agreement require strict compliance prior to acceleration, and that any noncompliance with those notice provisions can render a foreclosure sale void. *See Martins*, 214 F. Supp. 3d at 169. The allegations of the Complaint do not involve any claims pertaining to the issued foreclosure notices. In fact, Plaintiffs' Mortgage does not contain any of the relevant terms from the mortgage agreement at issue in *Martins*.[4] Instead, Plaintiffs improperly extend *Martins* to hold that unless a mortgagee strictly complies with *all applicable law*—not just paragraph 22—then the resulting foreclosure sale is void. Even though

---

[4] Plaintiffs, here, claim a violation of Paragraph 21 of the Mortgage—not paragraph 22. Important to the Court's analysis is that Paragraph 21 of the subject mortgage contains none of the default notice provisions from paragraph 22 that this Court addressed in its decision in *Martins*. Such a finding further illustrates and confirms the inapplicability of that decision to Plaintiffs' pending claims.

9

Defendants dispute Plaintiffs' interpretation and application of *Martins*, the dispute is unnecessary to adjudicate because there is no violation of Rhode Island law that plausibly mandates the voiding of the instant foreclosure sale(s).

Here, the Consent Order "supersede[] the prior Emergency Order in its entirety and any and all understandings associated therewith." (Compl., Ex. 1 at 7). In other words, the Emergency Order upon which Plaintiffs rely to allegation violations of § 19-14.11-1 and to claim breach of contract no longer exists. Furthermore, the Consent Order resolved the issues raised in the Emergency Order, and the DBR agreed to "vacate the denial, reinstate and grant the Third Party Servicer Applications." (*Id.*, Ex. 1 at 6.) To the extent Plaintiffs allege any supposed violation of a condition precedent in their mortgage arising out of the DBR's issuance of the Emergency Order, the Consent Order demonstrates that all violations, concerns and questions were retroactively abated. Moreover, while the Emergency Order issued an immediate cease and desist from servicing activity, Ocwen and the responding parties promptly commenced an action for judicial review that specifically questioned the DBR's authority to suspend Ocwen's licenses without notice and hearing. All of these issues were resolved on execution of the Consent Order.

The entry of the Consent Order between Ocwen and the DBR on September 29, 2017 not only granted Ocwen its necessary loan servicing license(s) to which Plaintiffs question, but effectively replaced the entirety of the Emergency Order and the issues raised therein. Furthermore, the Consent Order does not invalidate Ocwen's servicing activity on Plaintiffs' loan, or any loan for that matter, during this time period or otherwise provide any penalty for servicing conduct during the period in question. Had the DBR intended to hold Ocwen in violation for its continuing servicing of the loans following the Emergency Order and prior to the Consent Order, it was the sole entity responsible for imposing fines for any such violation. *Cf.*

302348499v2 1010819

R.I. Gen. Laws § 19-14-23. The absence of any holding, imposition of fine, or express conclusion of violation in the Consent Order ameliorates and eliminates any basis upon which the Plaintiffs could seek a breach of condition precedent to an otherwise lawful foreclosure. The Consent Order itself demonstrates the absence of any violation of Rhode Island law.

Defendants refute Plaintiffs' attempted demand at strict compliance with Paragraph 21 as an overly expansive reading and interpretation of the *Martins* decision. A determination of whether strict compliance applies is, however, unnecessary because there is no violation of Rhode Island law to pursue a contract claim here. Count II of the Complaint is nothing more than a veiled attempt at establishing a cause of action for which none exists under Rhode Island law. The Complaint fails to demonstrate any proper grounds to maintain this suit against Ocwen for violations arising directly out of Ocwen's licensing status during the proposed class period. In light of this failure, this Court must similarly dismiss Count II of the Complaint with prejudice.

## V. CONCLUSION

For the foregoing reasons, and based on Plaintiffs failure to demonstrate a private right of action to maintain this suit, Ocwen Loan Servicing, LLC and HSBC Bank USA, National Association, as Trustee for Option One Mortgage Loan Trust 2007-HL1, Asset-Backed Certificates, Series 2007-HL1, respectfully request the Court grant their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and dismiss this action in its entirety with prejudice and enter any further relief deemed necessary and proper.

302348499v2 1010819

Respectfully submitted,

OCWEN LOAN SERVICING, LLC; and
HSBC BANK USA, NATIONAL
ASSOCIATION, AS TRUSTEE FOR
OPTION ONE MORTGAGE LOAN TRUST
2007-HL1, ASSET-BACKED
CERTIFICATES, SERIES 2007-HL1,

By Their Attorneys,


*/s/ Ethan Z. Tieger*
Samuel C. Bodurtha, Bar No. 7075
Ethan Z. Tieger, Bar No. 9308
HINSHAW & CULBERTSON LLP
321 South Main Street, Suite 301
Providence, RI 02903
401-751-0842
401-751-0072 (facsimile)
sbodurtha@hinshawlaw.com
etieger@hinshawlaw.com

Dated:    August 17, 2018


## CERTIFICATE OF SERVICE

I, Ethan Z, Tieger, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on August 17, 2018.

*/s/ Ethan Z. Tieger*
Ethan Z. Tieger

302348499v2 1010819