# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

ARTUR ANDRADE, JULIA ANDRADE,  )
On behalf of themselves and all others so  )
similarly situated,  )
  )     CA NO. 18-cv-00385-WES-LDA
       *Plaintiffs*,  )
vs.  )
  )
OCWEN LOAN SERVICING, LLC,  )
SERVICING, LLC, HSBC BANK  )
USA, N.A. as trustee for OPTION ONE  )
MORTGAGE LOAN TRUST  )
2007-HL1,  )
  )
       *Defendants*.  )

## PLAINTIFFS MOTION FOR LEAVE TO AMEND AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION

Now come the Plaintiffs, by and through their undersigned Counsel, who respectfully request this Honorable Court to grant leave, thereby permitting Plaintiffs to file an Amended Complaint, for the reasons as set forth herein.

## FACTS

Plaintiffs filed the Instant Action in RI Superior Court alleging that Defendants breached the terms of the subject matter mortgage at paragraph 21, violated R.I.G.L. § 19-14.11-1, and violated a cease and desist order of the Rhode Island Department of Business Regulation Division of Banking rendering the foreclosure and sale of the subject property void. The Defendants removed said action to this Honorable Court on July 11, 2018 and filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief on August 17, 2018.

Defendants argue in their motion that a Consent Order, entered into by Defendant Ocwen, does not give any indication that Ocwen's servicing activity was to be invalidated or void, during

the period from the issuance of an Emergency Order of the Rhode Island Division of Banking to cease and desist all third party servicing activity, through the execution of the Consent Order, which granted them licensure as a Third Party Servicer. Defendants further argue that the Consent Order supersedes the prior Emergency Order and that the Consent Order resolved and dismissed the Emergency Order, thereby exonerating Ocwen for its activities as a non-licensed third party servicer as if those activities, in blatant disregard for RI law and Orders of State Banking Regulators, had never happened. The Defendants offer no legal precedent in support of their argument.

Additionally, Defendants argue that Plaintiffs cannot maintain their claim as to Count I of their Complaint because a there is no private right of action under R.I.G.L. § 19-14.11-1 and argue further that because the Consent Order exonerates Ocwen from their unlicensed servicing activity, that Plaintiffs claim for breach of contract also fails because there was no violation of applicable law and therefore Count II of the Complaint also fails.

Plaintiffs herein seek to amend their Complaint, effectively clarifying that Count I seeks only a Declaratory Judgment that the Defendants violated R.I.G.L. § 19-14.11-1. The proposed Amended Complaint also maintains Count II seeking damages and the rescission of foreclosures and sales wherein the Defendants breached mortgages by failing to foreclose in the manner prescribed by applicable law pursuant to their contractual obligation to do so, as they were not a licensed third party loan servicer pursuant to R.I.G.L. § 19-14.11-1 and were prohibited by statute from third party servicing activity during the time period alleged. The proposed Amended Complaint further seeks to add an additional Representative Plaintiff and extends the time period of the allegations as they relate to the proposed class, from April 20, 2017 through September 28,

2017; to July 1, 2015 through September 28, 2017 which represents the entire time period Ocwen allegedly serviced Rhode Island mortgages for third parties without proper licensure.

In their proposed Amended Complaint, Plaintiffs are not seeking to enforce state banking regulations but are instead suing under a straightforward state law contract theory, alleging that the Defendants failed to foreclose in the manner prescribed by applicable law by foreclosing and conducting mortgagee sales when not licensed to do so and when under an order by State Banking Regulators to cease and desist such activity.  For these reasons and the reasons further set forth herein, the Plaintiffs allege that the Defendants did not uphold their end of their contractual bargain with Plaintiffs and Plaintiffs request to amend their Complaint should be granted.

## <u>STANDARD OF REVIEW</u>

Pursuant to Fed. R. Civ. P. Rule 15(a) a party may amend its pleadings by leave of court or by written consent of the adverse party; "[L]eave shall be freely given when justice so requires." In <u>Foman v. Davis</u>, 371 U.S. 178 (1962), the court noted that Rule 15(a) declares that leave to amend shall be "freely given" when justice so requires and that "this mandate is to be heeded." *Id*. at 230. "It is too late in the day, and entirely contrary to the spirit of the Federal Rules of Civil Procedure, for decisions on the merits to be avoided on the basis of such mere technicalities...The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome, and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. Rule 15(a) declares that leave to amend "'shall be freely given when justice so requires'". If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "'freely given'". Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." <u>Foman v. Davis</u>, 371 U.S. 178 (1962).

<h1 style="text-align:center"><u>ARGUMENT</u></h1>

**<u>Argument Generally</u>**

In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "'freely given'".

Plaintiff's request here is not an undue delay. After the Defendant filed their Motion to Dismiss, the Plaintiffs worked diligently and in a timely fashion to further review and research the facts of their case and Plaintiffs Counsel drafted the proposed Amended Complaint as attached hereto. (See Exhibit 1).

Further, there is no evidence of bad faith or dilatory motive on the part of the Plaintiffs. The Plaintiffs have simply reviewed the Defendants motion, done more research into the facts of their case with respect to their allegations and seek to present it. Additionally, as there have been no other failures to cure deficiencies by amendments previously allowed, same is not a factor in reviewing the Plaintiffs request herein.

Moreover, there is no undue prejudice to the Defendant. "As a general rule, the risk of substantial prejudice increases with the passage of time. … Delay in moving to amend also increases the risk that the opposing party will not have an adequate opportunity to prepare his case on the new issues raised by the amended pleading." (See Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 1488 at 670-71 (1990)). Those concerns are absent here. In fact, the proposed amendment to the Complaint eliminates claims and simplifies the case by focusing on a single claim for breach of contract.

Permitting Plaintiffs to amend at this stage would not reduce Defendants ability to defend this action. "Courts denying motions to amend have often done so because the proposed amended complaint would complicate litigation at the last minute." Id. Plaintiffs, however, are not seeking to amend their complaint "on the eve of trial, or after a lengthy discovery process has already concluded. In fact, the herein motion, rather than complicating this litigation, actually reduces it by eliminating legal theories." (See: Heritage Healthcare Services, Inc. v. Beacon Mutual Insurance Company, No. PB 02-7016, 2011 R.I. Super. (Sept. 4, 2008)).

Additionally, the Rhode Island Supreme Court has "consistently interpreted Rule 15(a) to allow trial justices to grant amendments to the pleadings liberally if justice so requires." Faerber, 568 A.2d at 328-29 (R.I. 1990). The reason for this liberal approach is "to facilitate the resolution of disputes on their merits rather than on blind adherence to procedural technicalities." Wachsberger v. Pepper, 583 A.2d 77 (R.I. 1990) (citing Inleasing Corp v. Jessup, 475 A.2d 989 992). The claims as presented in Plaintiffs proposed Amended Complaint are clearly a proper subject of relief, which ought to be afforded an opportunity to be tested on the merits.

Moreover, R.I. Super. Civ. P. R. 15(c) provides a test in which a properly granted amendment shall relate back to the date of the original pleading. "The parameters of this relation-

5

back doctrine incorporate several underlying policies, not the least of which is to ameliorate the effect of the statute of limitations." See Mainella v. Staff Builders Ind. Svcs. Inc., 608 A.2d 1141, 1143 (R.I. 1992) citing Siegel v. Converters Transportation, Inc., 714 F.2d 213, 216 (2d Cir. 1983); 6A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1497 (1990). Specifically, the relation back test is "whether the amended pleading alleges a matter that arises out of the same 'conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" Id. citing Super. R. Civ. P. R. 15(c).

Plaintiffs assert that they have satisfied the requisite relation back test found in Rule 15(c). Specifically, the Amended Complaint relies on the previously alleged grounds that the mortgage at issue was wrongfully foreclosed and that the mortgagee's sale was wrongfully conducted as Defendants breached said mortgage at paragraph 21 by failing to foreclose and sell in a manner prescribed by applicable law.

Additionally, the proposed Amended Complaint is not an exercise in futility. While the Defendants argue that Plaintiffs present no basis that Ocwen's foreclosure and sale violated Rhode Island law thus breaching the mortgage contract, they do not and cannot cite a single legal precedent in support of their argument. However, the Defendants argument is fatally flawed and it is clear that the Defendants breached provisions found in paragraph 21 of the subject mortgage by failing to abide by "Applicable Law" when foreclosing and conducting mortgagee's foreclosure sales as alleged in the proposed Amended Complaint.

**Defendants Violations of Applicable Law**

Paragraph 21 of the subject mortgage references "applicable law" in two key sentences as emphasized below. The first reference is; "Lender, at its option, and subject to applicable law, may

6

then or thereafter invoke the STATUTORY POWER OF SALE", and the second reference is; "the

Property shall be sold in the manner prescribed by applicable law".

Paragraph 21 of the subject mortgage states;

> 21. Acceleration; Remedies. If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, <u>Lender, at its option, and subject to applicable law, may then or thereafter invoke the STATUTORY POWER OF SALE</u> and/or any other remedies described in this Paragraph 21, including, but not limited to, reasonable attorney's fees and costs of title evidence.

> If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in paragraph 14. Lender shall publish the notice of sale, and <u>the Property shall be sold in the manner prescribed by applicable law</u>. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

> (Emphasis Added).

As the subject property is located in the State of Rhode Island, Rhode Island law applies, or is applicable to the provisions of the mortgage contract. Paragraph 15 of the subject mortgage addresses Governing Law of the mortgage and states;

> 15. Governing Law; Severability. This Security Instrument shall be governed by federal law and <u>the law of the jurisdiction in which the property is located</u>. In the event that any provision or clause of this Security Instrument or Note conflicts with applicable law, such conflict shall not effect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

(Emphasis Added).

Pursuant to Rhode Island law, a loan servicer or an entity servicing mortgage loans is defined as an entity, "…on behalf of the note holder, collecting and receiving payments…on obligations due and owing to the note holder pursuant to a residential mortgage loan, and, when the borrower is in default…<u>finalizing collection of the obligation through the foreclosure process</u>". (See: R.I.G.L. § 19–14.10–3(6)(i)(E)). (Emphasis Added).

R.I.G.L. § 19-14.11-1 is a Rhode Island law which bars third party servicers of residential mortgage loans from operating in Rhode Island without a license.  R.I.G.L. § 19-14.11-1 states;

> § 19-14.11-1 License required. [Effective July 1, 2015.]. –  (a) No person shall act as a third-party loan servicer, directly or indirectly, for a loan to a Rhode Island borrower without first obtaining a license under this chapter from the director or the director's designee.
>
> (b) No license shall be required of:
>
> (1) A depository institution, or an affiliate or subsidiary of a depository institution, that is controlled by, or under common control with, the depository institution and subject to the regulatory authority of the primary regulator of the depository institution.
>
> (2) A lender licensed under chapter 14 of title 19 that retains the servicing rights on a loan originally closed in the lender's name and subsequently sold, in whole or in part, to a third party, provided that the provisions of §§ 19-14.11-2 (segregated accounts) and 19-14.11-4 (prohibited acts and practices) of this chapter shall apply to such lender.
>
> (3) A debt-management company licensed in this state when engaged in activities permitted pursuant to its debt-management license.
>
> (4) An attorney licensed in this state when collecting a debt on behalf of a client.
>
> (5) Bona-fide nonprofit, organizations, exempt from taxation under section 501(c) of the Internal Revenue Code, that are approved by the Department of Housing and Urban Development as housing

counseling agencies; that have a physical location in Rhode Island;
and that lend state or federal funds.

The well accepted definition of the term "Applicable Law" as referenced in residential mortgages is; "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."[1] This definition has been adopted by Fannie Mae and Freddie Mac and is incorporated under the "Definitions", section (I) in Fannie Mae and Freddie Mac uniform mortgage contracts.

If any ambiguity in the definition of the term "Applicable Law", as used in the subject mortgage exists, then that ambiguity must be construed against the drafter. "Where an ambiguity exists in a provision of a contractual document, the construction of that provision is a question of fact." (See: Fryzel v. Domestic Credit Corp., 120 R.I. 92, 98-99 (R.I. 1978) citing Geary v. Hoffman, 98 R.I. 413, 417,204 A.2d 302, 305 (1964); Russolino v. A.F. Rotelli Sons, 85 R.I. 160, 163,128 A.2d 337, 340 (1957). "Ambiguities in a contract must be construed against the drafter of the document. See: Fryzel, *Id*. citing A.C. Beals Co. v. Rhode Island Hosp., 110 R.I. 275, 287,292 A.2d 865, 872 (1972); Zifcak v. Monroe, 105 R.I. 155, 159,249 A.2d 893, 896 (1969); Russolino v. A.F. Rotelli Sons, *supra* at 164, 128 A.2d at 340).  "Under Rhode Island law, an ambiguous policy term should be construed in favor of coverage and against the insurer." (See: Textron Inc. v. Aetna Casualty Surety Co., 754 A.2d 742, 749 (R.I. 2000) citing Campbell v. Norfolk Dedham Mutual Fire Insurance Co., 682 A.2d 933, 935 (R.I. 1996) (holding that "[i]f the terms of an insurance contract are subject to more than one reasonable interpretation, the policy will be construed in favor of the insured to avoid forfeiture"); Zanfagna v. Providence Washington

---

[1] See: http://www.freddiemac.com/uniform/pdf/3040.pdf

Insurance Co., 415 A.2d 1049, 1051 (R.I. 1980) (charging the fault for any ambiguity "to the insurer who selected the language").

Logic dictates that if an entity acting as a third party servicer of residential mortgage loans must be licensed to conduct such activity in the State of Rhode Island, then acting as a third party servicer of residential mortgage loans without a license in the State of Rhode Island would be a violation of Rhode Island law applicable to the third party servicing of residential mortgages. In fact, the legislature was quite clear with the language they chose to frame the statute, stating from the very first sentence of the statute that "No person shall act as a third-party loan servicer, …without first obtaining a license under this chapter from the director or the director's designee."

In further support of this fact, the Legislature drafted R.I.G.L. § 19-14.11-4 which identifies and defines the prohibited acts and practices under R.I.G.L. 19-14.11 *et seq.*;

> 19-14.11-4. Prohibited acts and practices.
>
> It is a violation of this chapter for a person to:
>
> (1) Directly or indirectly employ any scheme, device, or artifice to defraud or mislead borrowers or lenders or to defraud any person.
>
> (2) Engage in any unfair or deceptive practice toward any person.
>
> (3) Obtain property by fraud or misrepresentation.
>
> (4) Use any unfair or unconscionable means in servicing a loan.
>
> (5) Knowingly misapply or recklessly apply loan payments to the outstanding balance of a loan.
>
> (6) Knowingly misapply or recklessly apply payments to escrow accounts.
>
> (7) Require the unnecessary forced placement of insurance when adequate insurance is currently in place.

(8) Fail to provide loan payoff information within the time period set forth in chapter 19.

(9) Charge excessive or unreasonable fees to provide loan payoff information.

(10) Fail to manage and maintain escrow accounts in accordance with § 19-9-2.

(11) Knowingly or recklessly provide inaccurate information to a credit bureau, thereby harming a consumer's credit worthiness.

(12) Fail to report both the favorable and unfavorable payment history of the consumer to a nationally recognized consumer credit bureau at least annually if the servicer regularly reports information to a credit bureau.

(13) Collect private mortgage insurance beyond the date for which private mortgage insurance is required.

(14) <u>Knowingly or recklessly facilitate the illegal foreclosure of real property collateral</u>.

(15) Knowingly or recklessly facilitate the illegal repossession of chattel collateral.

(16) Fail to respond to consumer complaints in a timely manner.

(17) <u>Conduct any business covered by this chapter without holding a valid license as required under this chapter, or assist, or aid and abet, any person in the conduct of business under this chapter without a valid license as required under this chapter</u>.

(18) Fail to comply with any federal or state law, rule, or other legally binding authority relating to the evaluation of loans for modification purposes or the modification of loans.

(19) <u>Fail to comply with this chapter, or rules adopted under this chapter, or fail to comply with any orders or directives from the director, or fail to comply with any other state or federal law, including the regulations thereunder, applicable to any business authorized or conducted under this chapter</u>.

(Emphasis Added).

11

The Representative Plaintiffs aver that when acting as a servicer without license and when under an administrative order to cease and desist such activity, Defendants Ocwen and HSBC did: (1) directly employ a scheme, device, or artifice to mislead borrowers and lenders by acting as a third party servicer without proper licensure and in violation of an administrative order to cease and desist such activity; (2) engage in unfair and deceptive practices towards borrowers of loans they serviced in Rhode Island; (3) obtain property by misrepresentation; (4) used unfair and unconscionable means in servicing loans when acting as a third party servicer without proper licensure and in violation of an administrative order to cease and desist such activity; (5) knowingly and recklessly facilitate the illegal foreclosure of real property collateral when foreclosing as a third party servicer without proper licensure and in violation of an administrative order to cease and desist such activity; (6) conduct business covered by this chapter without holding a valid license as required under this chapter, and assisted, aided and abetted, an entity in the conducting of business under this chapter without a valid license as required under this chapter; (7) fail to comply with this chapter, and the rules adopted under this chapter, and failed to comply with orders and directives from the director; (8) and did fail to comply with state law, including the regulations under R.I.G.L. 19-14.11 *et seq.* applicable to any business authorized or conducted under said chapter.

Considering the foregoing, there can be little argument that it is a violation of Rhode Island law for a third party servicer to operate in Rhode Island without being duly licensed or regardless of whether or not that servicer was under an administrative order from the R.I. Division of Banking to cease and desist servicing activity.

It is undisputed that the subject mortgage was being serviced, and the foreclosure and sale at issue were conducted. by Ocwen, a non-licensed entity at the time of said foreclosure and sale.

12

These actions, conducted by Ocwen on HSBC's behalf, were in violation of Rhode Island law. Therefore, Ocwen and HSBC lacked authority and jurisdiction to carry out the foreclosure and sale at issue, because Ocwen was not licensed to engage in such activity and was further was prohibited from doing so, pursuant to an administrative order and statute, at the time of the subject foreclosure and sale.

It is well settled law that if an entity does not have jurisdiction and/or authority to foreclose and sell, then that foreclosure is ineffectual and a nullity. "Any effort to foreclose by a party lacking "jurisdiction and authority" to carry out a foreclosure under these statutes is void." (See; U.S. Bank National Assoc. v. Ibanez, 458 Mass. 637, 647 (Mass. 2011)Chace v. Morse, 189 Mass. 559, 561 (1905), citing Moore v. Dick, supra. See Davenport v. HSBC Bank USA, 275 Mich. App. 344, 347-348 (2007) (attempt to foreclose by party that had not yet been assigned mortgage results in "structural defect that goes to the very heart of defendant's ability to foreclose by advertisement," and renders foreclosure sale void)).

It cannot be reasonably disputed that Ocwen was not a licensed servicer pursuant to R.I.G.L. § 19-14.11-1 at the time of the alleged foreclosure and sale. As such, Ocwen did commit no less than seven (7) of the prohibited acts and practices under R.I.G.L. 19-14.11-4, which identifies and defines the prohibited acts and practices under R.I.G.L. 19-14.11 *et seq*., when acting as a third party loan servicer without licensure pursuant to R.I.G.L. § 19-14.11-1. Without proper licensure to service mortgages in Rhode Island, Ocwen had no authority or jurisdiction to foreclose and sell during the time period it serviced Rhode Island mortgages without proper licensure. Therefore, Ocwen lacked the jurisdiction and authority to foreclose and sell at the time of the foreclosure and sale as alleged. These facts support the Representative Plaintiffs well pled allegations in the proposed Amended Complaint that the Defendants breached the subject

13

mortgage by failing to invoke the Statutory Power of Sale in accordance with applicable law and failing to sell the subject property in the manner prescribed by applicable law.

**The Consent Order**

The Defendants seek to escape the consequences of their actions by claiming that because Ocwen resolved their licensing and other issues with Rhode Island Department of Business Regulation (DBR) Division of Banking when entering into the Consent Order[2], this Court should pretend that the violations of Rhode Island law as alleged[3] never happened or that their violations of Rhode Island law were retroactively abated pursuant to the Consent Order. Interestingly, the Defendants cite no legal precedent in support of this argument in their motion to dismiss.

As the Defendants argue; "The Consent Order, which set forth the terms of the agreement and settlement with the DBR, was executed on September 29, 2017. Importantly, the Consent Order included the following terms:

> 27. Subject to the condition precedent of the Respondents fulfilling any outstanding application requirements and subject to the continuing condition of the Respondents' compliance with the "Global Minimum Settlement Terms" . . . the [DBR] will vacate the denial of, reinstate and grant the Third Party Servicer Applications.

> 28. The Respondents acknowledge that the granting of the Rhode Island Third Party Servicer Applications in no way alters the restrictions in the Global Minimum Settlement Terms as to the scope of activities that can be conducted under the Third Party Loan Servicer Licenses.
> (See: Compl., Ex. 1 at 6-7.)."

The Defendants continue to argue that; ""The Consent Order does not give any indication that Ocwen's servicing activity of approximately 6,422 loans secured by Rhode Island property was to be invalidated or void during the time period from the issuance of the Emergency Order

---

[2] See: Complaint Exhibit 1.
[3] Specifically violation of R.I.G.L. § 19-14.11-1.

through the entry and execution of the Consent Order. (*See generally id.*, Ex. 1). In fact, the Consent Order, by its terms, precisely states that the Consent Order is "entered into for the purpose of resolving the issues raised in the Emergency Order" and that the "Consent Order supersedes the prior Emergency Order in its entirety and any and all understandings associated herewith." (*Id.*, Ex. 1 at 7.) In other words, any question as to the licensing and servicing activity of Ocwen raised in the Emergency Order were resolved and dismissed by entry of the Consent Order…""

Glaringly absent from the Defendants analysis of the Consent Order are two issues that belie their argument. First, the Consent Order does not state that it is the specific intent of the DBR to grant licensure to Ocwen to act as third party servicer pursuant to § 19-14.11-1, retroactively or with retroactive effect.  In fact, said Consent Order does not state that Ocwen's license is grated retroactively at all.

Second, the Consent Order does not state that it is the specific intent of the DBR to exonerate or shield Ocwen from civil liability for violations of Rhode Island law prior to being licensed as a third party servicer of residential mortgage loans or during the pendency of the Emergency Order, as such power does not rest with the DBR. In an expression of its intent that Ocwen comply with all "applicable laws", the closely paraphrased and quite specific Consent Order states at paragraph 38;

> 38. <u>Compliance: Other Laws.</u> Compliance with the terms of this Consent Order <u>does not relieve the Respondents of any obligation to comply with other applicable laws</u> or regulations administered by or through the Department or any other governmental agency.
>
> (Id., Ex. 1 at 7). (Emphasis Added).

"[a]lthough [a consent order] receives a court's imprimatur, [it] is in essence a contract and therefore must be construed as a contract..." (See: <u>Vanderheiden v. Marandola,</u> 994 A.2d 74, 78

(R.I. 2010) citing <u>Now Courier, LLC v. Better Carrier Corp.</u>, 965 A.2d 429, 435 (R.I. 2009)). "whether a contract is clear and unambiguous is a question of law." (See: <u>Beacon Mutual</u> <u>Insurance</u> <u>Co.</u>, 11 A.3d at 648). And if "a contract is determined to be clear and unambiguous, then the meaning of its terms constitute[s] a question of law" as well. *(*See: <u>Young v.</u> <u>Warwick Rollermagic</u> <u>Skating Center, Inc.</u>, 973 A.2d 553, 558 (R.I. 2009)).

The Representative Plaintiffs aver that there exists no difficulty in concluding that the Consent Order is clear and unambiguous. Giving its language its plain, ordinary, and usual meaning, the consent order is not reasonably susceptible to more than one interpretation. (See: <u>W.P. Associates</u>, 637 A.2d at 356). It is detailed, organized, clearly written, thorough, and its terms are defined with the utmost specificity. However, the Consent Order <u>does not</u> state, unambiguously or otherwise, that the DBR granted Ocwen licensure under § 19-14.11-1 retroactively, and it <u>does not</u> state that Ocwen is exonerated or shielded from civil liability for violations of Rhode Island law prior to being granted license under § 19-14.11-1, or during the pendency of the Emergency Order. The Consent Order <u>does</u> however, unambiguously state that "[c]ompliance with the terms of this Consent Order <u>does not relieve the Respondents of any obligation to comply with other</u> <u>applicable laws</u>…"

Furthermore, even assuming *arguendo* that the intent of the DBR was to grant Ocwen retroactive licensure, in the absence of any specific statement of such intent in the Consent Order, the question as to their intent becomes a matter of fact and cannot be determined as a matter of law. "the intent of the parties to an ambiguous contract is a question of fact which cannot be properly resolved by summary judgment." <u>O'Connor v. McKanna</u>, 116 R.I. 627, 634 (R.I. 1976) citing <u>Cram v. Sun Ins. Office, Ltd.</u>, 375 F.2d 670, 674 (4th Cir. 1967). "In <u>Cassidy v. Springfield</u> <u>Life Ins. Co.</u>, *supra* at 619, 262 A.2d at 380, this court held that where a contract is clear and

unambiguous, the meaning of its terms constitutes a question of law for the court, and it is only when ambiguity exists that construction of its terms becomes one of fact. O'Connor v. McKanna, 116 R.I. 627, 633-34 (R.I. 1976) citing Cassidy v. Springfield Life Ins. Co., 106 R.I. 615. 262 A.2d 378 (1970).

Additionally, absent a clear expression of legislative intent expressed in statute permitting the DBR to grant licensure retroactively, § 19-14.11-1 cannot be construed to imply the granting of such power. The Rhode Island Supreme Court has stated that it "reviews Superior Court judgments interpreting statutes on a de novo basis. In doing so, our "ultimate goal is to give effect to the purpose of the act as intended by the Legislature." Stebbins v. Wells, 818 A.2d 711, 715 (R.I.2003) (per curiam).   Id. (quoting Mottola v. Cirello, 789 A.2d 421, 423 (R.I.2002))…To be sure, when the language of the statute is clear and unambiguous, the court must interpret it literally, giving the words of the statute their plain and ordinary meanings.   Stebbins, 818 A.2d at 715. And "[a]n agency cannot modify the statutory provisions under which it acquired power, unless such an intent is clearly expressed in the statute."   Little v. Conflict of Interest Commission, 121 R.I. 232, 236, 397 A.2d 884, 886 (1979) Labor Ready Northeast. Inc. v. McConaghy, 849 A.2d 340, 344 (R.I. 2004) ("Statutes are given retroactive effect only when the Legislature clearly expresses such an application." Gem Plumbing Heating Co., Inc. v. Rossi, 867 A.2d 796, 802 (R.I. 2005) citing  Pion v. Bess Eaton Donuts Flour Co., 637 A.2d 367, 371 (R.I.1994)). (See Also: State v. Germane, 971 A.2d 555 (R.I. 2009)).

In § 19-14.11-1 there is no expression of intent whatsoever on the part of the Legislature to prescribe the DBR with the authority to grant licensure pursuant to said statute retroactively.

Further, the power to exonerate or shield the business entities from civil liability for violations of Rhode Island law does not rest with the DBR. In fact, there is no provision granting

the DBR such power under Rhode Island law. While the DBR may regulate, require licensing, and enforce Rhode Island laws governing the conduct of the businesses they oversee, they lack any power to impinge or otherwise obstruct the rights of Rhode Island citizens to bring actions seeking declaratory judgment that those regulated businesses may have violated Rhode Island law. (See: R.I.G.L. Title 42, *et seq.*). Moreover, Rhode Island law at § 9-30, *et seq.* provides for the clearly defined rights of its citizens to seek declaratory judgment that any law has or has not been violated;

> § 9-30-1. Scope.
>
> The superior or family court upon petition, following such procedure as the court by general or special rules may prescribe, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

"The purpose of declaratory judgment actions is to render disputes concerning the legal rights and duties of parties justiciable without proof of a wrong committed by one party against another, and thus facilitate the termination of controversies." Millett v. Hoisting Eng. Div. Dept. Labor, 119 R.I. 285, 291 (R.I. 1977) citing 1 Anderson, *Actions for Declaratory Judgments* § 4 (2 ed. 1951). Theroux v. Bay Assoc., Inc., 114 R.I. 746, 748, 339 A.2d 266, 267 (1975); Portsmouth Hosp. v. Indemnity Ins. Co., 109 N.H. 53, 242 A.2d 398 (1968); Davis v. State, 183 Md. 385, 37 A.2d 880 (1944). "In light of their highly remedial nature then declaratory judgment statutes should be liberally construed; they should not be interpreted in a narrow or technical sense." Millett, Id. citing Sherwood Medical Indus. Inc. v. Deknatel, Inc., 512 F.2d 724 (8th Cir. 1975); Beacon Constr. Co. v. Matco Elec. Co., 521 F.2d 392 (2d Cir. 1975); Beaudoin v. State, 113 N.H. 559, 311 A.2d 310 (1973).

18

Ultimately it is clear that the Consent Order does not invalidate or retroactively abate Ocwen's actions when conducting the business of servicing mortgages in the State of Rhode Island without a license, nor does it bar parties aggrieved by those actions from seeking declaratory judgment that Ocwen violated R.I. law and concurrently breached their obligations pursuant to mortgages they serviced in R.I., for failing to foreclose in the manner prescribed by Applicable Law.

**Breach of Contract**

The Defendants argue in their motion that "Plaintiffs resort to Count II of the Complaint[4] in an attempt to circumvent the statutory pitfalls in maintaining a private action under Count I for violations of Rhode Island's licensing regulations, but the Consent Order ameliorates any possible breach of contract action here. Under Count II, Plaintiffs seek to hold the Defendants liable for breach of contract in failing to comply with certain conditions precedent on exercise of the statutory power of sale. Plaintiffs argue that because the mortgage contract allegedly requires strict compliance with the provisions of Paragraph 21, the alleged violations of § 19-14.11-1 constitute the necessary breach of those terms, and thus, now void the foreclosure sale. (*See* Compl. ¶¶ 75-82). Plaintiffs are again wrong."

However, in <u>Dan-Harry v. PNC Bank, N. A.</u>, C.A. No. 17-00136 (D.R.I. 2018), an accepted report and recommendation denying a defendant's motion to dismiss a plaintiff's breach of contract claim wherein said plaintiff alleged substantively similar issues as the Representative Plaintiffs herein, clearly supports the plausibility of Representative Plaintiffs well pled allegations in the proposed Amended Complaint seeking contract-based damages and other remedies, including the voiding of the foreclosure sale

---

[4] Count II of the Representative Plaintiffs Complaint seeks relief for Breach of Contract.

"Plaintiff alleges that the foreclosure on his property was in breach of paragraph 9(d), which expressly provides that compliance with the HUD regulations is a condition precedent to foreclosure, because [defendant] failed to afford him the mandatory pre-foreclosure face-to-face meeting in violation of the requirement in 24 C.F.R. § 203.604(b). The claim requires this [c]ourt to determine whether the incorporation language in paragraph 9(d) means what it seems to say: that is, does it impose on [defendant] as mortgagee a contractual obligation to comply with 24 C.F.R. § 203.604(b) as a condition precedent to foreclosure? And, if it does, are the remedies available to the mortgagor for the breach different from what state law normally affords for breach of contract after the consummation of the foreclosure sale?" (See: Dan-Harry v. PNC Bank, N. A., C.A. No. 17-00136 Report and Recommendation (Magistrate Judge P. Sullivan) (D.R.I. 2018)).

The Report and Recommendation in Dan-Harry continues with Magistrate Sullivan reasoning; "…"The Third approach adopted in a number of states, focuses on the unambiguous contract language in the mortgage. [c]ourts adopting this approach recognize that the mortgagor has a cause of action based on breach of contract for damages and other remedies under state law where the contract expressly conditions foreclosure on compliance with HUD regulations, and the mortgagee fails to comply. See, e.g., Njema v. Wells Fargo Bank, N.A., 124 F. Supp. 3d 852 (D. Minn. 2015) (bank's failure to hold face-to-face meeting is breach of mortgage contract; damage remedy, including for loss of mortgagor's property rights, contemplated but rejected based on lack of proof of injury); Wells Fargo Bank, N.A. v. Cook, 31 N.E.3d 1125, 1129 (Mass. App. Ct. 2015) ("[w]here such regulations have been incorporated into the mortgage, compliance with the regulations has been held to be a condition precedent to foreclosure of FHA-insured mortgages"; failure to comply strictly with power of sale renders foreclosure sale void but remedy limited because issue arose in summary eviction proceeding); In re Silveira, No. 11-44812-MSH, 2013

20

WL 1867472, at *13 (Bankr. D. Mass. May 3, 2013) (HUD regulations incorporated into mortgage are enforceable in claim for breach of contract seeking damages); Mullins v. GMAC Mortg., LLC, No. 1:09-cv-704, 2011 WL 1298777, at *2-3 (S.D. W.Va. Mar. 31, 2011) (plaintiff is not taking "upon himself the role of regulatory enforcer" but is instead "suing under a straightforward state law contract theory, alleging that defendant did not uphold their end of the contractual bargain"; allegation that "plaintiffs suffered damage by losing their home" sufficient for claim to survive motion to dismiss). In Bates[5], the Eleventh Circuit held that such a cause of action exists under Georgia law: "HUD regulations clearly referenced in a deed as a conditions precedent to the power to accelerate and the power of sale could form the basis of a breach of contact action." 768 F.3d at 1130-33. Accordingly, the court concluded, the mortgagor may recover "damages that would not have occurred but for the breach.…"

"…Rhode Island has adopted the principle that a mortgagee must adhere to the standard of strict compliance with respect to conditions precedent to foreclosure and that a failure to comply renders the foreclosure sale void. Bucci[6], 68 A.3d at 1084-85 ("The power to sell under a mortgage or deed of trust is a matter of contract between the mortgagor and mortgagee under the conditions expressed in the instrument."); accord Boynton v. Fed. Hous. Fin. Agency, et al., C.A. No. 15-350-JJM, 2017 WL 4124240 (D.R.I. Sept. 15, 2017); Martins v. Fed. Hous. Fin. Agency, 214 F. Supp. 3d 163 (D.R.I. 2016); Demers[7], 511 B.R. 233. Mindful of the plain language in paragraph 9(d), read in light of the guidance from these decisions, I find that settled Rhode Island precedent supplies powerful support for the prediction that Rhode Island would adopt the third approach, which treats such a claim as a breach of contract that gives rise to appropriate remedies as

---

[5] See: Bates v. JPMorgan Chase Bank, N.A., 768 F.3d 1126, 1130-31 (11th Cir. 2014).
[6] See: Bucci v. Lehman Bros. Bank, FSB, 68 A.3d 1069, 1087 (R.I. 2013).
[7] See: In re Demers, BK No: 13-11539 (Bankr. D.R.I. Jun. 5, 2014).

contemplated by state contract law. See <u>Mullins</u>, 2011 WL 1298777, at Case 1:17-cv-00136-WES-PAS Document 13 Filed 10/17/17 Page 13 of 18 Page ID #: 160 "simply, plaintiffs are suing under a straightforward state law contract theory, alleging that defendants did not uphold their end of the contractual bargain..."

 "…Also pertinent is that the Rhode Island Supreme Court's decisions regarding mortgage interpretation turn to Massachusetts case law to fill in the interstices in Rhode Island mortgage jurisprudence. See <u>Cruz v. Mortg. Elec. Registration Sys, Inc.</u>, 108 A.3d 992, 997 (R.I. 2015) (looking to guidance from Massachusetts to develop law pertaining to standing to challenge mortgage assignments) (citing as guidance <u>Wilson v. HSBC Mortg. Servs., Inc.</u>, 744 F.3d 1 (1st Cir. 2014) (applying Massachusetts law)); <u>Bucci</u>, 68 A.3d at 1087 ("we interpret the term 'mortgagee' in our statutes in a similar fashion as did the Supreme Judicial Court of Massachusetts") (citing as guidance <u>Culhane v. Aurora Loan Servs. of Neb.</u>, 826 F. Supp. 2d 352 (D. Mass. 2011) (applying Massachusetts law), aff'd, 708 F.3d 282 (1st Cir. 2013), and <u>Eaton v. Fed. Nat'l Mortg. Ass'n</u>, 969 N.E. 2d 1118 (Mass. 2016)). Accordingly, it is appropriate for this Court to consider persuasive the relevant mortgage-law guidance from Massachusetts. See, e.g., <u>Jose</u>, 54 N.E. 3d at 1132 & n.3 (claim that foreclosure may be rendered invalid by mortgagee's failure to conduct pre-foreclosure face-to-face meeting survives summary judgment); <u>Cook</u>, 31 N.E. 3d at 1131 (mortgagor's claims to restore title and avoid eviction based on mortgagee's failure to comply with HUD regulations before foreclosing survive summary judgment)…"

"…Based on the foregoing, and with appropriate deference to this [c]ourt's recent rulings in Ferreira[8], Peralta[9] and Gonzalez[10], I find that Rhode Island would…recognize that the mortgagor may bring a breach of contract claim for damages and other remedies against a mortgagee that breaches its express contractual duty under paragraph 9(d) to conduct the pre-foreclosure face-to-face meeting as required by 24 C.F.R. § 203.604(b). I further find that Plaintiff's allegations regarding his claims for contract-based damages and other remedies, including the potential voiding of the foreclosure sale, are sufficient to conform to the plausibility standard set forth in Iqbal/Twombly…Consequently, I recommend that [d]efendant's motion to dismiss Count III of the complaint be denied."" (Id. Dan-Harry *supra* Report and Recommendation).

The Representative Plaintiffs claim in the instant action mirror those in Dan-Harry. In Dan-Harry, "…the plaintiff sued for breach of contract because 24 C.F.R. § 203.604(b) requires that "[t]he mortgagee must have a face-to-face interview with the mortgagor,... This regulatory mandate is incorporated into the language of [p]laintiff's mortgage in a standardized paragraph – paragraph 9(d). Paragraph 9(d) expressly requires compliance with "Regulations of the HUD Secretary" (including 24 C.F.R. § 203.604(b)) as a condition precedent to foreclosure under the mortgage…" (Id. Dan-Harry *supra* Report and Recommendation).

In the proposed Amended Complaint, the Representative Plaintiffs sue for breach of contract because R.I.G.L. § 19-14.11-1 requires that third party mortgage servicers obtain a license and that failure to do so is a prohibited act under statute. This statutory mandate is incorporated

---

[8] See: Ferreira et al. v. Ditech Fin. LLC, et al., C.A. No. 17-115JJM, Text Order of July 10, 2017 ("the Court finds that the Plaintiffs have alleged a cause of action for breach of contract under Paragraph 9(d) of the mortgage contract") .

[9] See: Peralta v. U.S. Bank Nat'l Ass'n, C.A. No. 17-263JJM, Text Order of July 31, 2017 ("As to Count 3 (breach of contract), the Plaintiff has set forth plausible allegations to support a breach of contract claim for violation of paragraph 9(d), through its failure to comply with HUD regulation 24 CFR 203.604(b).").

[10] See: Gonzalez v. Wells Fargo, N.A., C.A. No. 17-276-JJM (bench decision) (Oct. 2, 2017) (Denying a motion to dismiss a plaintiff's breach of contract claim based on defendant's failure to comply with the pre-foreclosure face-to-face meeting requirement).

into the language of Plaintiff's mortgage in a standardized paragraph – paragraph 21. Paragraph 21 expressly requires compliance with "Applicable Law" when exercising the statutory power of sale, conducting foreclosure and/or selling at mortgagee's sale.

R.I.G.L. § 19-14.11-1 is a law governing the licensure of third party mortgage servicers. Pursuant to R.I.G.L. § 19–14.10–3(6)(i)(E), a [third party] loan servicer is defined as an entity, "…on behalf of the note holder, collecting and receiving payments…on obligations due and owing to the note holder pursuant to a residential mortgage loan, and, when the borrower is in default…<u>finalizing collection of the obligation through the foreclosure process</u>". Entities without proper licensure pursuant to R.I.G.L. § 19-14.11-1 are prohibited from acting as third party mortgage servicers and such actions are defined as prohibited acts and practices pursuant to R.I.G.L. § 19-14.11-4. Defendant Ocwen was acting as a third party mortgage servicer, on behalf on HSBC, at all times relevant to the allegations as alleged in the Complaint and the proposed Amended Complaint. Defendant Ocwen, on behalf of Defendant HSBC, foreclosed the subject matter mortgage and sold the subject property at mortgagee's sale when not licensed pursuant to R.I.G.L. § 19-14.11-1. Therefore, the Defendants violated R.I.G.L. § 19-14.11-1, law "applicable" to Ocwen's authority and jurisdiction to lawfully conduct any foreclosure and sale, on HSBC's behalf or otherwise, as Ocwen was not licensed pursuant to said statue prior to foreclosure and sale as alleged. By failing to comply with "Applicable Law" when exercising the statutory power of sale, and conducting foreclosure and mortgagee's sale, the Defendants breached their obligation and express contractual duty pursuant to the subject mortgage at paragraph 21, which is a condition precedent to foreclosure and sale.

**<u>CONCLUSION</u>**

WHEREFORE, for the reasons as stated in the foregoing, the Representative Plaintiffs by and through their undersigned Counsel, hereby respectfully request this Honorable Court to grant them leave to Amended their Complaint.

Dated: October 5, 2018

Respectfully Submitted,
The Representative Plaintiffs,
On behalf of themselves and all those
So similarly situated
By their Attorney,

/s/ *Todd S. Dion*
Todd S. Dion Esq. (#6852)
15 Cottage Avenue, Suite 202
Quincy, MA 02169
401-965-4131 Phone
401-270-2202 Fax
toddsdion@msn.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2018, a copy of the foregoing document, filed through the CM/ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on the parties listed on the NEF as not receiving electronic notice.

*/s/ Todd S Dion*
Todd S. Dion