# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ARTUR ANDRADE, JULIA ANDRADE, On behalf of themselves and all others so similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC; and HSBC BANK USA, N.A., AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2007-HL1,<br><br>      Defendants. | C.A. No. 1:18-cv-00385-WES-LDA |

### DEFENDANTS' COMBINED REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

### I.  INTRODUCTION

In response to Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs, Artur Andrade and Julia Andrade ("Plaintiffs"), request leave to amend their complaint in an effort to not only avoid a dismissal of their claims arising under R.I. Gen. Laws § 19-14.11-1, but also in an effort to generate a class with the addition of another borrower. Plaintiffs' opposition memorandum, their memorandum of law in support of their request for leave to amend (which mirrors their opposition), and their proposed amended complaint, provide no additional facts or law to escape the futility of their argument concerning Ocwen Loan Servicing, LLC's ("Ocwen") licensing status or compliance with "applicable law" at foreclosure.

The Consent Order between Ocwen and the Rhode Island Department of Business Regulation addressed and resolved any claim Plaintiffs might raise concerning Ocwen's licensing status.[1] Even assuming a viable challenge to Ocwen's licensing status, Plaintiffs lack a private right of action to enforce any licensing requirements under the § 19-14.11-1 and cannot cure that right by seeking declaratory relief here. Plaintiffs can only speculate on the DBR's intent to penalize Ocwen beyond the plain terms of the Consent Order by interpreting the order to claim all foreclosures conducted during this period are void, even though the Consent Order, by its very terms, superseded the Emergency Order, vacated all denials, and granted Ocwen the applications to which Plaintiffs now dispute. The Court should not permit this case to proceed for the simple reason that Plaintiffs are not the DBR, are not entitled to enforce Rhode Island's licensing statute, and cannot expand the statute's reach and the clear and express terms of the Consent Order to realize a private benefit of voiding out otherwise valid and enforceable foreclosures.

Defendants submit this combined memorandum in further support of their Motion to Dismiss and to respond and oppose Plaintiffs' attempted amendment of their Class Action Complaint.

## II.   ARGUMENT

A.   <u>The Class Action Complaint and Proposed Amended Class Action Complaint Should be Dismissed Because the Rhode Island DJA Cannot Be Invoked to Create a Private Right of Action Where the Underlying Statute Does Not Afford a Right to Relief</u>

Plaintiffs devote significant argument in this action to explain that they are not in fact seeking damages for Defendants' alleged violation of § 19-14.11-1, but rather a declaratory judgment that Defendants' foreclosures violated the provisions of that statute. (Pls.' Opp. at 15-

---

[1] Terms not defined herein shall be ascribed their definition as set forth in Defendants' Memorandum of Law.

16; Pls.' Mot for Leave to Amend at 2-3, 18-19.) Plaintiffs' attempt to repackage their argument under Count I of the proposed Amended Complaint as a demand for declaratory relief does not alleviate Plaintiffs of the requirement or burden to demonstrate an actionable claim or right to relief. Simply put, it is inappropriate for Plaintiffs to rely on the Rhode Island Declaratory Judgment Act, R.I. Gen Laws § 9-30-1, *et seq.* ("DJA"), to circumvent the lack of a private right of action under § 19-14.11-1.[2]

In support of their newfound demand for declaratory relief, Plaintiffs claim that the DBR lacks authority to prevent private citizens from seeking a declaratory judgment that certain businesses have violated Rhode Island law. Plaintiffs rely upon R.I. Gen. Laws § 9-30-1 to argue that Rhode Island law permits individuals to seek a declaratory judgment as to whether a particular law has or has not been violated. Plaintiffs' reasoning has one glaring flaw—where a plaintiff seeks a declaration as to the violation of a statute, that plaintiff still must demonstrate the underlying statute affords a personal remedy. Plaintiffs cannot do so here.

The Rhode Island Supreme Court has explained that where a statute does not afford a party with a personal remedy, the Court cannot imply such a right of action by way of a claim for declaratory or compensatory relief. *See Pontbriand v. Sundlun*, 699 A.2d 856, 868 (R.I. 1997);

---

[2] Even though this action has been removed to federal court, Plaintiffs' proposed Amended Complaint demands relief under Rhode Island's DJA instead of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* In reviewing whether the state or federal declaratory judgment act will apply, federal courts agree that even in circumstances where a plaintiff's complaint pleads a cause of action under a state declaratory judgment act, the court, after removal, will apply the Federal Declaratory Judgment Act. *See, e.g., Traincroft, Inc. v. Ins. Co.*, C.A. No. 14-10551-FDS, 2014 U.S. Dist. LEXIS 85170, at *16 (D. Mass. June 23, 2014) ("[B]ecause the case has been removed to federal court and the present question of ripeness is procedural, whether this Court may grant a declaratory judgment must be reviewed under the standard of the federal Declaratory Judgment Act . . . ."); *Jones v. Sears Roebuck & Co.*, 301 Fed. Appx. 276, 281 n.12 (4th Cir. 2008) (holding that although complaint invoked West Virginia's Declaratory Judgment Act, the Court will apply the Federal Declaratory Judgment Act). This Court appears to agree that in diversity actions, the Federal Declaratory Judgment Act will apply. *See Essex Ins. Co. v. Westerly Granite Co.*, 2014 U.S. Dist. LEXIS 142507, at *4 (D.R.I. Oct. 7, 2014) ("[I]n 'this declaratory judgment action, in which subject matter jurisdiction is based solely on diversity, federal law governs whether a justiciable controversy exists within the purview of the [federal] Declaratory Judgment Act[.]' Thus, the Court need not address the parties' contentions made pursuant to the Rhode Island Declaratory Judgment Act, R.I. Gen. Laws § 9-30-1 *et seq.*" (quoting *Standard Fire Insurance Co. v. Sassin*, 894 F. Supp. 1023, 1025-1026 (N.D. Tex. 1995))).

*see also Long v. Dell, Inc.*, 93 A.3d 988, 1004-1005 (R.I. 2014) ("Because that request for declaratory relief relates solely to underlying rights or causes of action unavailable to [plaintiff], he may not pursue a declaratory judgment. Accordingly, the Superior Court justice properly dismissed [plaintiff]'s requests for declaratory and injunctive relief."). In *Pontbriand*, the Court reviewed whether the plaintiff depositors in various insolvent financial institutions could maintain a claim for violations of R.I. Gen. Laws § 19-14-2 against the governor as a request for declaratory relief under § 9-30-1. *Id.* at 859. Section 19-14-2 governs the inspection of certain information and records by state officials and provides a $1,000 fine for violations. *See Pontbriand*, 699 A.2d at 867-868.

The Rhode Island Supreme Court determined that the express language of the Section 19-14-2 did not provide the plaintiffs with a personal remedy—much like the instant statute, also under Title 19, does not provide Plaintiffs with a private right of action. Recognizing plaintiffs' claims for declaratory and compensatory relief would require the Court to imply a private cause action, the Court concluded that it was "unnecessary and inappropriate . . . to seek or find an implied right of action." *Id.* at 868 (citing *Citizens for Preservation of Waterman Lake v. Davis*, 420 A.2d 53 (R.I. 1980).[3]

---

[3] There is no suggestion in the caw law that the analysis presented here should change or should be altered by application of the Federal Declaratory Judgment Act over Rhode Island's DJA. Plaintiffs in bringing this proposed amended class action complaint have elected to pursue claims under the state DJA even though this action has since been removed to Federal Court. While Defendants' cite to Rhode Island case law in interpreting declaratory judgment actions, this is done specifically to address whether Plaintiffs are permitted to circumvent a lack of a private right of action. This analysis is not procedural in nature (thus mandating an application of federal law) but rather a substantive determination on whether a particular statute affords a private cause of action or whether a claimant is permitted in such instances to seek declaratory relief (regardless of whether that declaratory relief is federal or state relief). *See BCB Bancorp, Inc. v. Progressive Cas. Ins. Co.*, 2013 U.S. Dist. LEXIS 187941, at *7-8 (D.N.J. Oct. 8, 2013) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law. . . . Both the federal Declaratory Judgment Act and its state-based counterparts are procedural in nature." (internal quotation marks omitted)). While the application of the federal declaratory judgment act is procedural under *Erie*, the Court must still establish that the plaintiffs, under state law, can establish a private right of action. *See Harris Cnty. Tex. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015). Put another way, the federal declaratory judgment act does not itself create a cause of action in a diversity case; rather, the Court must

Here, § 9-14.11-1 does not provide the Plaintiffs with a private right of action. Rather, as discussed in Defendants' Memorandum in support of their Motion to Dismiss, the Rhode Island General Laws provide that Title 19 specifically tasks the Director of the DBR with imposing administrative assessments and penalties for violations of the provisions of that title, or importantly, "any regulation promulgated pursuant to any provisions of this title."[4] R.I. Gen Laws. § 19-14-23(f). The Rhode Island Supreme Court has rejected the task of Courts to imply private rights of action into statutes. *See Stebbins v. Wells*, 818 A.2d 711, 716 (R.I. 2003). By characterizing their claims as a request for declaratory relief that Defendants violated § 9-14.11-1, Plaintiffs effectively demand an advisory opinion on whether the DBR properly penalized Defendants through entry of the Consent Order. This is not the proper role for the Court here, especially considering that the DBR—the main agency tasked with administering and enforcing the provisions of § 9-14.11-1—has already rendered its decision and granted Ocwen its application and permitted a servicing license without any interruption.

B.  <u>The Consent Order Entered Between Ocwen and the DBR Definitively and Conclusively Resolved Ocwen's Licensing Status</u>

Notwithstanding the absence of any private right of action and the Consent Order, Plaintiffs argue that Ocwen's foreclosure violated the provisions of Paragraph 21 of the Plaintiffs' mortgage agreement. Plaintiffs' arguments seeking to invalidate the foreclosure based

---

review the state substantive law to determine if there is an underlying state cause of action to establish jurisdiction. *See id.* at 552-53. Consequently, in this regard, this Court is certainly permitted to review Rhode Island state decisions, and specifically, the Rhode Island Supreme Court's decision in *Pontbriand*, 699 A.2d 856, to make its determination.

[4] Plaintiffs state in their Opposition that "the power to exonerate or shield the business entities from civil liability for violations of Rhode Island law does not rest with the DBR. In fact, there is no provision granting the DBR such power under Rhode Island law." (Pls.' Opp. at 15.) Plaintiffs' interpretation is wrong. The General Assembly, in enacting Title 19 and all of its provisions and sections, affirmatively decided that the DBR, and the DBR alone, is responsible for enforcement of these licensing provisions. In no way are Defendants "obstruct[ing] the rights of Rhode Island citizens to bring actions seeking declaratory judgment." Defendants are simply advocating that where a statute does not provide a private right of action, a plaintiff should not be allowed to rely on the DJA. And importantly, this conclusion is supported by Rhode Island law.

on the "applicable law" provision of the Mortgage, and their arguments that the Consent Order somehow did not expressly provide that Ocwen was retroactively granted a license under § 19-14.11-1, wholly miss the mark. Essentially, Plaintiffs demand that this Court—and not the DBR—make findings and issue the appropriate penalty to Ocwen for its servicing operations following the DBR's issuance of the Emergency Order. Plaintiffs' line of reasoning impermissibly demands the Court's opinion on whether state administrative agencies have administered the proper degree of enforcement of state regulations. *Cf. New Eng. Tel. & Tel. Co. v. Conversent Communs. of R.I.*, 178 F. Supp. 2d 81, 94 (D.R.I. 2001) ("[T]his Court does not usually find itself in the role of an appellate court of state agency action."). It is likewise not the proper role for Plaintiffs here to step into the shoes of the DBR, speculate on the DBR's true intent, and demand relief that exceeds the plain and express terms of the Consent Order.

In circumstances where a statute does not provide a private cause of action, judicial remedies beyond the administrative enforcement contemplated by that statute are inappropriate. *See, e.g., Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1084 (5th Cir. 1980) ("The regulations [of the Rehabilitation Act of 1973] make no provision for a private cause of action, suggesting that a private judicial remedy may be difficult to harmonize with the administrative enforcement framework."); *Walley v. Willow Valley Cmtys.*, No. CI-15-05937, 2016 Pa. Dist. & Cnty. Dec. LEXIS 949, at *179 (Pa. Feb. 8, 2016) ("Due to the lack of an express private cause of action and the comprehensive administrative plan that cloaks the Department of Health with exclusive authority to enforce the statutory scheme, we find that the [Pennsylvania's Healthcare Facilities Act] was not created for the purpose of protecting the individual [i]nterests of [plaintiff]." Courts should not be put in the position to have to issue private remedies where there is a clear administrative enforcement framework available under the particular statute. Here, Title 19

specifically provides for the framework in which the DBR pursues violations. Without any private cause of action available, this Court cannot grant Plaintiffs any personal remedies.

      C.     <u>Plaintiffs Cannot Establish Any Violation of "Applicable Law" or a Violation of Any Condition Precedent in the Mortgage to Challenge Foreclosure</u>

Plaintiffs argue that because the Consent Order does *not* specifically state that "it is the specific intent of the DBR to grant licensure to Ocwen to act as third party servicer" or "that it is the specific intent of the DBR to exonerate or shield Ocwen from civil liability," that the absence of this language somehow evidences the DBR's intent to leave these questions open to individual borrowers' suits and to this Court's interpretation. (Pls.' Opp. at 12-13.) Plaintiffs expand the plain language of the Consent Order beyond its unambiguous terms. If the DBR intended to include relief for past foreclosures conducted during the period after the Emergency Order, then such relief would have been included. Instead, the Consent Order, by its very terms, negated the Emergency Order on September 29, 2017. To now claim that the Emergency Order constitutes the basis for Plaintiffs' claims that Ocwen, on behalf of HSBC, as Trustee violated "applicable law" misreads and misinterprets the Consent Order. While the DBR provided in the Emergency Order that "Respondents shall immediately cease and desist from any and all unlicensed activity in this State, including, without limitation, acting as a third party loan servicer," (Compl. at ¶ 27, Ex. 1 at 5-6.), Ocwen and the responding parties immediately commended an action for judicial review in the Providence Superior Court (*Ocwen Loan Servicing, LLC et al. v. Director of R.I. Dep't of Bus. Reg.*, C.A. No. PC-2017-1862) and that suit remained open until the DBR and Ocwen entered into the Consent Order and then the case was dismissed.

The Consent Order entered between the DBR and Ocwen acknowledged the "Global Minimum Settlement Terms" between the parties. Paragraph 27 of the Consent Order provides "the [DBR] will vacate the denial of, reinstate and grant the Third Party Servicer Applications."

7

(Compl., Ex. 1 at 6-7.). Accordingly, as discussed in Defendants' memorandum of law in support of motion to dismiss, the facts of this case unquestionably demonstrate an attempt by the DBR to suspend Ocwen's servicing license, an immediate lawsuit to enjoin that suspension, and an agreed-to consent order that completely resolved the dispute Plaintiffs raise here. More importantly, Plaintiffs present no allegation of fact that the DBR is presently pursuing Ocwen for unlicensed foreclosures during this period.[5]

Plaintiffs point to the evidence of the DBR's "intent" that Ocwen comply with all "applicable laws" through the Consent Order's inclusion of Paragraph 38, providing that Ocwen and the "Respondents" were under an obligation to "comply with other applicable laws or regulations administered by or through" the DBR. (Compl., Ex. 1 at 7.) What Plaintiffs fail to realize though is that Ocwen's registration as a loan servicer did not fall under this "Compliance: Other Laws" section because the registration under § 19-14.11-1 was one of the main focuses of the Consent Order—and specifically addressed in Paragraphs 1, 16, 23, and 27-30, among others.[6]

In pursuit of their "applicable law" argument, Plaintiffs rely upon several distinguishable decisions,[7] including most notably, this Court's decision in *Dan-Harry v. PNC Bank, N.A.*, C.A. No. 17-cv-00136, 2018 U.S. Dist. LEXIS 31560 (D.R.I. Feb. 26, 2018). (See Pls.' Opp. at 17-

---

[5] In fact, the DBR was well aware that Ocwen, as of December 31, 2016, was servicing 6,422 loans in Rhode Island. (*Id.*, Ex. 1 at ¶ 25.). Furthermore, the DBR specifically requested that Ocwen provide the DBR with "*a list of all loans secured by Rhode Island property presently serviced by Respondents*" by November 1, 2017. (Id., Ex. 1 at ¶ 30.) How Plaintiffs can claim the DBR did not retroactively grant these servicer licenses for this period in question is simply beyond good reason.

[6] The Consent Order at Section V, "Rhode Island Third Party Servicer Licensing Terms," expressly and specifically states that the "Third Party Servicer Applications" are to be granted and that the "Respondents" must thereafter maintain these licenses in good standing with timely renewals in order to continue to perform any third party mortgage loan servicing activity in Rhode Island. (Compl., Ex. 1 at ¶¶ 27-30.)

[7] Plaintiffs Opposition and Motion for Leave to Amend appear to all but abandon their argument for strict compliance under *Martins v. Fed. Hous. Fin. Agency*, 214 F. Supp. 3d 163 (D.R.I. 2016), and instead, rely on cases interpreting paragraph 9 of standard-form mortgage agreements.

8

22.).  *Dan-Harry* arose from allegations that the defendants failed to hold a "face-to-face meeting" with plaintiff mortgagor prior to foreclosing on the property as required by the U.S. Housing and Urban Development ("HUD") regulations. *See id.* at *2. In *Dan-Harry*, the plaintiff argued that the foreclosure breached the mortgage because paragraph 9(d) contained an express requirement that the mortgagee comply with the HUD regulations and that such compliance was a condition precedent to foreclosure. *Id.* at *10. This Court ultimately found that "a breach of contract claim for damages and other remedies against a mortgagee that breaches its express contractual duty under paragraph 9(d) to conduct the pre-foreclosure face-to-face meeting as required by 24 C.F.R. § 203.604(b)." *Id.* at *21.

Contrary to *Dan Harry*, there is no express statutory provision in Paragraph 21 that the loan servicer must register with the State of Rhode Island as an express condition precedent to conducting foreclosure. All that is required under Paragraph 21 is that Ocwen sell the property at foreclosure "in the manner prescribed by applicable law." (Pls.' Opp. at 4-5.) Paragraph 21 does not create a condition precedent as in *Dan-Harry* where a borrower can allege violations of Rhode Island's servicing statute in demanding compliance with applicable law. Plaintiffs' only challenge to the subject foreclosure (and foreclosures of the putative class members) is a licensing issue that they have no right or reason to enforce.

Finally, Plaintiffs' breach of contract claim can only survive if Plaintiffs can, in fact, demonstrate an actual "breach" by Defendants. *See Charles Place Assocs. v. Carrier Corp.*, C.A. No. 1:09-cv-00535-JJM-PAS, 2013 U.S. Dist. LEXIS 97635, at *5 (D.R.I. July 12, 2013) (under Rhode Island law, "a plaintiff must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff." (quoting *Barkan v. Dunkin' Donuts Inc.,* 627 F.3d 34, 39 (1st Cir.2010))). As discussed above,

the Consent Order resolved and granted Ocwen's license to conduct loan servicing operations in Rhode Island effective as of the date of the Emergency Order. Thus, even if § 19.14.11-1 is incorporated into the mortgage and can be enforced by Plaintiffs, there is no "breach" of any contract with the Plaintiffs, as the Consent Order affirms Defendants have complied with all "applicable law."

### III.  CONCLUSION

For the reasons stated above, and for the reasons discussed in the Memoranda of Law filed in support of Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), Ocwen Loan Servicing, LLC and HSBC Bank USA, National Association, as Trustee for Option One Mortgage Loan Trust 2007-HL1, Asset-Backed Certificates, Series 2007-HL1, improperly named as "HSBC Bank USA, N.A. as trustee for Option One Mortgage Loan Trust 2007-HL1" request dismissal of this action and a denial of Plaintiffs' Motion for Leave to Amend.

Respectfully submitted,

OCWEN LOAN SERVICING, LLC; and
HSBC BANK USA, NATIONAL
ASSOCIATION, AS TRUSTEE FOR
OPTION ONE MORTGAGE LOAN TRUST
2007-HL1, ASSET-BACKED
CERTIFICATES, SERIES 2007-HL1,

By Their Attorneys,

*/s/ Ethan Z. Tieger*
Samuel C. Bodurtha, Bar No. 7075
Ethan Z. Tieger, Bar No. 9308
HINSHAW & CULBERTSON LLP
321 South Main Street, Suite 301
Providence, RI 02903
Telephone: (401) 751-0842
Facsimile: (401) 751-0072
sbodurtha@hinshawlaw.com
etieger@hinshawlaw.com

Dated: November 1, 2018

**CERTIFICATE OF SERVICE**

I, Ethan Z, Tieger, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on November 1, 2018.

*/s/ Ethan Z. Tieger*
Ethan Z. Tieger

11