UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ARTUR and JULIA ANDRADE,                :
on behalf of themselves and all others  :
so similarly situated                   :
                                        :
v.                                      :     C.A. No. 18-00385-WES
                                        :
OCWEN LOAN SERVICING, LLC,              :
et al.                                  :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B)) are Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint (ECF Doc. No. 7) and Plaintiffs' Motion for Leave to File an Amended Class Action Complaint (ECF Doc. No. 13). A hearing was held on July 22, 2019.

At the hearing, Plaintiffs' counsel indicated that he was no longer pursuing Count I (a Declaratory Judgment claim) and focused his request to amend and opposition to Defendants' dismissal arguments on Count II of the proposed Amended Class Action Complaint (a Breach of Contract claim). Accordingly, the Court will consider Plaintiffs' Motion to Amend (ECF Doc. No. 13) solely as to Count II and whether or not such amendment would be futile (applying the Rule 12(b)(6) standard) as argued by Defendants. Such treatment moots Defendants' pending Motion to Dismiss (ECF Doc. No. 7) as to the original Class Action Complaint.

**Background**

This is a putative class action challenging the validity of mortgage foreclosures occurring between July 1, 2015 and September 28, 2017. The representative Plaintiffs identified in the

Amended Class Action Complaint (the Andrades and Dubois) were the subject of residential mortgage foreclosures on June 1, 2017 and September 26, 2017, respectively. The representative Plaintiffs sue Ocwen Loan Servicing, LLC ("Ocwen") as the third-party mortgage loan servicer for their respective mortgagees, HSBC Bank USA, NA as Trustee for Option One Mortgage Loan Trust 2007 – HL1 ("HSBC"), and Deutsche Bank Savings Fund Society, FSB as Trustee for Argent Securities, Inc. Asset Backed Pass-through Certificates 2006-M2 ("Deutsche Bank").

In Count II, Plaintiffs allege that Defendants failed to foreclose and sell in a manner prescribed by "applicable law" in breach of the applicable mortgage contracts. In particular, they allege that Ocwen was not a licensed, third-party servicer in Rhode Island at the time of the foreclosures in violation of R.I. Gen. Laws § 19-14.11-1 and an April 20, 2017 Emergency Cease and Desist Order issued by the Rhode Island Department of Business Regulation ("RIDBR") and directed at Ocwen.

**Standard of Review**

Because Defendants oppose Plaintiffs' Motion to Amend on futility grounds, the Court will review Count II of the proposed Amended Class Action Complaint in accordance with the Rule 12(b)(6), Fed. R. Civ. P., standard. In considering a Rule 12(b)(6) motion, the Court must accept as true all plausible factual allegations in the Complaint and draw all reasonable inferences in Plaintiffs' favor. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). In so doing, the Court is guided by the now-familiar standard requiring the inclusion of facts sufficient to state a plausible claim for relief:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability

> requirement, but it asks for more than a sheer possibility that a
> defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). Put differently, for a complaint to survive a motion to dismiss, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Consistent with Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), federal courts must apply the Twombly/Iqbal standard even in cases where state law controls the substantive claims. This includes cases like this one that were removed from state court. Reilly v. Cox Enters., Inc., C.A. No. 13-785S, 2014 WL 4473772, at *3 (D.R.I. Apr. 16, 2014).

**Discussion**

Count II is a state law breach of contract claim. The representative Plaintiffs allege that their mortgage contracts (consistent with all standard mortgage contracts) provide that "any foreclosure and sale be conducted in a manner prescribed by applicable law."[1] (ECF Doc. No. 13-1 at ¶ 96). They describe Count II as "a straightforward state law contract theory, alleging that the Defendants failed to foreclose in the manner prescribed by applicable law by foreclosing and conducting mortgagee sales when not licensed to do so [in Rhode Island] and when under an order by [the RIDBR] to cease and desist such activity." (ECF Doc. No. 19 at p. 3).

Effective July 1, 2015, Rhode Island law required all third-party loan servicers for a loan to a Rhode Island borrower to obtain a license from the RIDBR. See R.I. Gen. Laws § 19-14.11-1. On April 20, 2017, the RIDBR issued an Emergency Order to Ocwen pursuant to R.I. Gen. Laws § 42-35-14(c). The RIDBR Order required Ocwen, inter alia, to "immediately cease and desist from any and all unlicensed activity in [Rhode Island], including, without limitation, acting

---

[1] This language is contained in paragraph 21 of the Andrade Mortgage and paragraph 22 of the Dubois Mortgage.

as a third party loan servicer." (ECF Doc. No. 1-3 at p. 28). On April 25, 2017, Ocwen sought Judicial Review and a stay of the Emergency Order in the Providence County Superior Court (PC-2017-1862). Id. The RIDBR regulatory action was resolved by a Consent Order dated September 28, 2017. (ECF Doc. No. 1-3 at pp. 23-36). The Consent Order provided, in part, that "[s]ubject to the condition precedent of the Respondents fulfilling any outstanding application requirements and subject to the continuing condition of the Respondents' compliance with the 'Global Minimum Settlement Terms'…the [RIDBR] will vacate the denial of, reinstate and grant the Third Party Servicer Applications." Id. at p. 28, ¶ 27. It also provided that it was "entered into for the purpose of resolving the issues raised in the Emergency Order without any admissions or denials" and "supersedes the prior Emergency Order in its entirety and any and all understandings associated therewith." Id. at p. 29, ¶¶ 31-32. Defendants contend that the Consent Order "retroactively abated" any prior "violations, concerns and questions." (ECF Doc. No. 8 at p. 10). Plaintiffs dispute Defendants' "retroactive abatement" argument as legally unsupported and argue that, in any event, the operative issue presented in Count II is compliance with applicable law "at the time of the subject foreclosure and sale." (ECF Doc. No. 19 at p. 10).

Defendants first argue that Count II is precluded as a matter of law by the Rhode Island Supreme Court's holding in Citizens for Pres. of Waterman Lake v. Davis, 420 A.2d 53 (R.I. 1980). Defendants contend that Davis holds that where a statute does not afford a party with a personal remedy (as is the case with R.I. Gen. Laws §19-14.11-1), a court may not recognize such a right of action by way of implying a contractual claim for declaratory or compensatory relief.

In Davis, a citizens group sued a landfill operator for allegedly operating in violation of (1) a state environmental statute exclusively enforceable by a state agency; and (2) certain town ordinances. The Town intervened and sought injunctive relief and a declaration that the landfill

operator's violations were a breach of the Town's contract with the operator because the local ordinances were to be considered an "implied term of the contract." 420 A.2d at 58. The Supreme Court rejected the Town's claim and its attempt to use its contract with the operator to enhance its enforcement rights under the ordinance with contractual remedies. Id. at 59. The Davis case is plainly distinguishable and does not support Defendants' position. This is not a case where Plaintiffs are seeking to incorporate a regulatory requirement as an "implied" contract term. Rather, Plaintiffs are claiming breach of an express contract term requiring foreclosure and sale in compliance with "applicable law." They are not seeking to contractually enforce a regulatory licensing requirement by implication. Thus, Davis is inapposite.

The parties also debate the applicability of this Court's holding in Dan-Harry v. PNC Bank, N.A., C.A. No. 17-00136-WES, 2018 WL 1083581 (D.R.I. Feb. 26, 2018). In Dan-Harry, the plaintiffs contend that the Bank failed to comply with its contractual and regulatory duty as mortgagee to hold a face-to-face meeting with the mortgagor before foreclosing as required by HUD regulations. The mortgage contract at issue in Dan-Harry contained a clause expressly requiring compliance with HUD regulations as a condition precedent to foreclosure. Id. at *2.

After thoroughly reviewing relevant precedent, the Court recognized in Dan-Harry that the mortgagors could bring a state law breach of contract claim for damages and other remedies against a mortgagee who breaches its express contractual duty under the mortgage contract to comply with applicable law, i.e., HUD regulations. Id. at *3. The Court found that the plaintiffs' contract claims met the Iqbal/Twombly plausibility standard and denied the Bank's Motion to Dismiss. Id.[2]

---

[2] Ultimately, the Dan-Harry case did not survive Rule 56 scrutiny in the absence of any trial-worthy factual issue of noncompliance with the applicable HUD regulation, and the lack of any evidence of actual damages flowing from the alleged breach. See Dan-Harry v. PNC Bank, N.A., C.A. No. 17-00136-WES, 2019 WL 1253481 (D.R.I. Mar. 18, 2019).

Plaintiffs here, of course, argue that Dan-Harry is on all fours with this case and supports the plausibility of Count II. Defendants counter that Dan-Harry is distinguishable because there is "no express statutory provision in [the mortgage contract] that the loan servicer must register with the State of Rhode Island as an express condition precedent to conducting foreclosure…[and] [a]ll that is required under [the mortgage contract] is that Ocwen sell the property at foreclosure 'in the manner prescribed by applicable law.'" (ECF Doc. No. 16 at p. 9). They assert that Plaintiffs' only challenge to foreclosure on the defaulted mortgages is a "licensing issue that they have no right or reason to enforce." Id.

On balance and applying the Rule 12(b)(6) standard, Count II of the Amended Class Action Complaint states a plausible breach of contract claim. The mortgage contracts in issue require foreclosure and sale "in the manner prescribed by applicable law."[3] It does not take a leap of logic to conclude that a mortgagor who engages an unlicensed loan servicer to effectuate a foreclosure is not acting in a manner prescribed by applicable law. It is undisputed that R.I. Gen. Laws § 19-14.11-4 provides that conducting any business covered by Chapter 14.11 without holding a valid license as required, or assisting, or aiding and abetting, such unlicensed activity, is a statutory violation.

Defendants raise additional factual defenses that cannot be resolved pursuant to Rule 12(b)(6). For instance, Defendants argue that the Consent Order between Ocwen and RIDBR "definitively and conclusively" resolved Ocwen's licensing status. The Court simply cannot reach that conclusion on the current record. Plaintiffs allege plainly that Ocwen was not properly licensed in the State of Rhode Island at the relevant time, and the Court must accept that well-

---

[3] While the mortgage contracts in issue do not define the term "applicable law," the Fannie Mae/Freddie Mac uniform mortgage instrument (Form 3040) broadly defines "applicable law" as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."

pleaded allegation as true at this stage. Also, that allegation is supported by the terms of the RIDBR Emergency Cease and Desist Order and not directly controverted by the Consent Order. The Consent Order does not directly address Ocwen's licensing status at the time of the subject foreclosures. While it may be true that the Consent Order resolved Ocwen's licensing issue with the RIDBR, the Consent Order, on its face, does not specifically grant retroactive licensure to Ocwen, acknowledge that Ocwen was properly licensed during the relevant period, or absolve Ocwen from any civil liability for unlicensed activity.

Defendants also argue that Plaintiffs' only challenge to the foreclosures in issue relate to the licensing issue. In other words, they contend that these defaulted mortgages were destined ultimately for foreclosure, license or no license. While Defendants may well be correct and Plaintiffs may not have any evidence of actual damages flowing from the alleged breach, that is a fight for another day and presents a factual issue which cannot be resolved at this stage of the proceedings.[4]

**Conclusion**

For the foregoing reasons, I recommend that Defendants' Motion to Dismiss (ECF Doc. No. 7) be DENIED as moot and that Plaintiffs' Motion to Amend (ECF Doc. No. 13) be GRANTED in part solely as to the proposed Count II breach of contract claim. Plaintiffs shall, within fourteen days, submit a proposed one-count Amended Class-Action Complaint to the Court for its consideration in conjunction with this Report and Recommendation.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72.

---

[4] In Dan-Harry, the Court recognized that damages are a "fundamental element" of a breach of contract claim and entered summary judgment in the absence of any competent evidence of damages caused by the alleged breach. 2019 WL 1253481 at *2. The Court described the Plaintiff's claim that compliance with the applicable HUD regulation would have allowed him to avoid foreclosure of his defaulted mortgage as "mere wishful-thinking." Id.

Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


 /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
July 31, 2019