# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

ARTUR ANDRADE, JULIA ANDRADE, )
And NORMAN J. DUBOIS, JR., )
On behalf of themselves and all others so )
similarly situated, )
            )     CA NO. 18-00385-WES-LDA
     *Plaintiffs*, )
vs. )     AMENDED
OCWEN LOAN SERVICING, LLC, )     CLASS ACTION COMPLAINT
SERVICING, LLC, HSBC BANK )
USA, N.A. as trustee for OPTION ONE )     JURY DEMAND
MORTGAGE LOAN TRUST )
2007-HL1, and DEUTSCHE BANK )
SAVINGS FUND SOCIETY, FSB )
as trustee for ARGENT SECURITIES, )
INC. ASSET BACKED PASS-THROUGH )
CERTIFICATES 2006-M2 )
            )
     *Defendants*. )

---

## INTRODUCTION

1.     The Representative Plaintiffs Artur Andrade and Julia Andrade, and Norman J. Dubois, Jr., on behalf of themselves and all others so similarly situated, bring this class action as described in the paragraphs set forth herein. The Representative Plaintiffs seek damages and declaratory judgments that foreclosures and mortgagee's foreclosure sales of the Plaintiffs' properties by Defendants are void due to Defendants breaches of contract and breaches of condition precedents to the Statutory Power of Sale for failing to foreclose in a manner prescribed by "applicable law" by foreclosing and conducting mortgagee's sales in violation of R.I.G.L. § 19-14.11-1, and in violation of a cease and desist order of the Rhode Island Department of Business Regulation Division of Banking.

2.     The Representative Plaintiffs herein pray this Honorable Court find that the Defendants are in Breach of Contract, declare that foreclosures and mortgagee sales of the Representative Plaintiffs and class members mortgages and properties be declared void, enjoin the Defendants from further wrongful conveyance of Plaintiffs and class members properties, that the Defendants be Ordered to return the Representative Plaintiffs and class members to their status prior to the wrongful foreclosures and sales, including but not limited to, the rescission of all wrongful foreclosures and sales, and award the Plaintiffs and class members damages for the Defendants misconduct.

## JURISDICTION AND VENUE

3.     The events giving rise to the claims stated herein occurred in the District of Rhode Island and this venue is proper pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391.

4.     Venue is proper in this Honorable Court in that this Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. Rule 57.

5.     Pursuant to Fed. R. Civ. P. Rule 23(a)(1), this complaint is a putative class action in which the class is so numerous that joinder of all members is impracticable.

6.     Pursuant to Fed. R. Civ. P. Rule 23(b)(1), there are questions of law and fact common to the class.

7.     Pursuant to Fed. R. Civ. P. Rule 23(a)(3), the claims or defenses of the Representative Plaintiffs are typical of the claims or defenses of the class.

8.     Pursuant to Fed. R. Civ. P. Rule 23(a)(4), the Representative Plaintiffs will fairly and adequately protect the interests of the class.

9.     Pursuant to Fed. R. Civ. P. Rule 23(b)(1)(A)&(B), prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications

with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; and (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications and may substantially impair or impede their ability to protect their interests.

10.     Pursuant to Fed. R. Civ. P. Rule 23(b)(2), the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

11.     Pursuant to Fed. R. Civ. P. Rule 23(b)(3), the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## PARTIES

12.     Representative Plaintiffs Artur Andrade and Julia Andrade, on behalf of themselves and all those so similarly situated, are citizens of Rhode Island and are the former owners of 109-111 West Lawn Avenue, Pawtucket, RI 02860, which is the subject property as noted herein.

13.     Representative Plaintiff, Norman J. Dubois, Jr., on behalf of himself and all those so similarly situated, is a citizen of Rhode Island and is the former owner of 31 Borden Street, East Providence, RI 02915 which is one of the subject properties referenced herein.

14.     Defendant Ocwen Loan Servicing, LLC (Ocwen) is a mortgage loan servicer with headquarters located at 1661 Worthington Road, Suite100, West Palm Beach, FL 33409.

15.     Defendant HSBC BANK USA, N.A. (HSBC) is a banking related services company, headquartered at 1800 Tysons Blvd, Suite 50, Mc Lean, VA 22102. HSBC Bank USA, N.A. is the trustee for the Option One Mortgage Loan Trust 2007-HL1.

16.     Defendant Deutsche Bank Savings Fund Society, FSB as trustee for Argent Securities, Inc. Asset Backed Pass-Through Certificates 2006-M2 (Deutsche Bank), is located at 300 South Grand Avenue, 41st Floor, Los Angeles, CA 90071.

17.     At all times herein mentioned, Defendants, Ocwen and HSBC both individually and collectively, are and were agents and/or joint venturers of each other, and in doing the acts alleged herein were acting within the course and scope of such agency.

18.     Defendants, Ocwen and HSBC had actual and/or constructive knowledge of the acts of the other as described herein, and ratified, approved, joined in, acquiesced in, and/or authorized the acts of the other, and/or retained the benefits of said acts

19.     At all times herein mentioned, Defendants, Ocwen and Deutsche Bank both individually and collectively, are and were agents and/or joint venturers of each other, and in doing the acts alleged herein were acting within the course and scope of such agency.

20.     Defendants, Ocwen and Deutsche Bank had actual and/or constructive knowledge of the acts of the other as described herein, and ratified, approved, joined in, acquiesced in, and/or authorized the acts of the other, and/or retained the benefits of said acts

**ALLEGATIONS OF THE ANDRADE REPRESENTATIVE PLAINTIFFS**

21.     The Andrade Representative Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

22.     The Andrade Representative Plaintiffs bring these claims on behalf of themselves and all others so similarly situated.

23.     On December 5, 2006, the Andrade Representative Plaintiffs were granted the subject property at 109-111 West Lawn Avenue, Pawtucket, RI 02860. The deed evidencing said

conveyance was recorded in the City of Pawtucket, Clerk's Office, Land Evidence Records in Book 2779 at Page 111 on December 11, 2006.

24.     On December 5, 2006, the Andrade Representative Plaintiffs executed a mortgage and note both in the amount of Three Hundred Thirty Two Thousand Five Hundred and 00/100 ($332,500.00) Dollars, to Option One Mortgage Corporation as Lender and Mortgage Electronic Registration Systems, Inc. (MERS) as Mortgagee. Said mortgage was secured against the subject property and recorded in the City of Pawtucket, Clerk's Office, Land Evidence Records in Book 2779 at Page 113 on December 11, 2006. ("The Andrade Mortgage").

25.     The Andrade Mortgage states at paragraph 21 as follows;

> **ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:**
>
> **21. Acceleration; Remedies.** If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, accept <u>as required by "applicable law"</u>, and regardless of any prior forbearance. In such event, Lender, at its option, and <u>subject to "applicable law"</u>, may then thereafter invoke the **STATUTORY POWER OF SALE** and/or any other remedies or take any other actions <u>permitted by "applicable law"</u>. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorney's fees and costs of title evidence.
>
> If Lender invokes the **STATUTORY POWER OF SALE**, Lender shall mail a copy of a notice of sale to Borrower as provided in paragraph 14. Lender shall publish the notice of sale, and <u>the Property shall be sold in the manner prescribed by "applicable law"</u>. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.
>
> (Underlined Emphasis Added).

26.    On November 18, 2009, Sand Canyon Corporation (formerly known as Option One Mortgage Corporation) purportedly assigned the Andrade Mortgage to HSBC Bank USA, N.A. as trustee for Option One Mortgage Loan Trust 2007-HL1. Said assignment was recorded in the City of Pawtucket Clerk's Office Land Evidence Records in Book 3204 at Page 51 on November 20, 2009.

27.    Subsequently, Ocwen became the servicer of the Andrade Mortgage.

28.    On July 1, 2015, R.I.G.L. § 19-14.11-1 became effective. Said statute requires that all third-party residential mortgage servicers be licensed by the Rhode Island Department of Business Regulation Division of Banking. R.I.G.L. § 19-14.11-1 states;

> § 19-14.11-1 License required. [Effective July 1, 2015.]. – (a) No person shall act as a third-party loan servicer, directly or indirectly, for a loan to a Rhode Island borrower without first obtaining a license under this chapter from the director or the director's designee.
>
> (b) No license shall be required of:
>
> (1) A depository institution, or an affiliate or subsidiary of a depository institution, that is controlled by, or under common control with, the depository institution and subject to the regulatory authority of the primary regulator of the depository institution.
>
> (2) A lender licensed under chapter 14 of title 19 that retains the servicing rights on a loan originally closed in the lender's name and subsequently sold, in whole or in part, to a third-party, provided that the provisions of §§ 19-14.11-2 (segregated accounts) and 19-14.11-4 (prohibited acts and practices) of this chapter shall apply to such lender.
>
> (3) A debt-management company licensed in this state when engaged in activities permitted pursuant to its debt-management license.
>
> (4) An attorney licensed in this state when collecting a debt on behalf of a client.
>
> (5) Bona-fide nonprofit, organizations, exempt from taxation under section 501(c) of the Internal Revenue Code, that are approved by the Department of Housing and Urban Development as housing counseling agencies; that have a physical location in Rhode Island; and that lend state or federal funds.

29.     Further, R.I.G.L. § 19-14-26 sets criminal penalty for violations of R.I.G.L. Title 19, and states;

> § 19-14-26. Penalty for violations.
>
> Any person and the several members, officers, directors, agents, and employees of any person who violate or participate in the violation of any of the applicable provisions of this title, or any regulation promulgated under this title, is guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than one thousand dollars ($1,000) or by imprisonment not exceeding one year, or both. Each violation constitutes a separate offense. Complaints under the provisions of this chapter may be made by the director, or the director's designee, and shall not be required to give surety for costs. The attorney general shall prosecute all complaints under this chapter.

30.     On or about April 7, 2017, Ocwen, acting as third-party servicer on behalf of HSBC, caused to be sent to the Representative Plaintiffs a Notice of Mortgagee Foreclosure Sale. Said Notice of Mortgagee Foreclosure Sale stated a sale date of June 1, 2017. Ocwen also caused to published said notice.

31.     The Andrade Representative Plaintiffs allege that from July 1, 2015 through September 28, 2017, including on April 7, 2017 and June 1, 2017, Ocwen was not a licensed third-party servicer in the State of Rhode Island pursuant to R.I.G.L. § 19-14.11-1.

32.     On April 20, 2017, The Rhode Island Department of Business Regulation, Division of Banking issued an Emergency Order pursuant to R.I.G.L. 42-35-14(c) directing Ocwen to immediately cease and desist from all unlicensed activity in the State of Rhode Island, including without limitation, acting as a third-party loan servicer. (See: Exhibit 1; Consent Order Id. at ¶23(c)).

33.     The Andrade Representative Plaintiffs allege, that on June 1, 2017, Ocwen, acting as third-party mortgage servicer for HSBC foreclosed the Andrade Mortgage and sold the subject property at mortgagee's foreclosure sale. Such action is in violation of R.I.G.L. § 19-14.11-1, in violation

of and in blatant disregard for the Emergency Order, subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, and is void, invalid, and without force and effect, for Defendants failure to comply with conditions precedent prior to exercising the Statutory Power of Sale.

34.     The Andrade Representative Plaintiffs allege, that on July 12, 2017, Ocwen, while still under the command of the aforenoted Emergency Order[1], and without Rhode Island licensure as a third-party servicer, caused a foreclosure deed (Exhibit 2) to be recorded in the City of Pawtucket Clerk's Office Land Evidence Records in Book 4111 at Page 192. Such action is in violation of R.I.G.L. § 19-14.11-1, subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, and in breach of the ""applicable law"" provisions to the Statutory Power of Sale in the mortgage contract and is void, invalid, and without force and effect, for Defendants failure to comply with conditions precedent prior to exercising the Statutory Power of Sale.

35.     The Andrade Representative Plaintiffs allege, that the foreclosure and sale are in breach of paragraph 21 of the Andrade Mortgage, which requires that, "…subject to "applicable law", [Lender] may then thereafter invoke the **STATUTORY POWER OF SALE** and/or any other remedies or take any other actions permitted by "applicable law"…" (Emphasis Added). As such, all foreclosure actions (including notice, foreclosure, and sale) taken by the Lender, and/or their officers, directors, agents, and employees, are subject to ""applicable law"" and the property secured by the Andrade Mortgage can only be sold in a manner prescribed by and subject to ""applicable law"". As all actions of Ocwen in foreclosing and conducting mortgagee's foreclosure sale are in violation of R.I.G.L. § 19-14.11-1 and the Emergency Order, and subject to

---

[1] Ocwen entered into a Consent Order with the R.I. Department of Business Regulation Division of Banking on September 29, 2017, granting them License to act as a third-party servicer pursuant to R.I.G.L. § 19-14.11-1. (See: Exhibit 1).

prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, Ocwen and HSBC failed their obligation to the Representative Plaintiffs to ensure that those actions were conducted in a manner subject to and prescribed by ""applicable law"", thus breaching the Andrade Mortgage and for failing to first comply with the terms of the mortgage prior to exercising the power of sale.

36.     As such, the notice, publication, foreclosure and sale are in breach of the terms of paragraph 21 of the Andrade Mortgage contract due to Defendants failure to foreclose and sell in the manner prescribed by and subject to ""applicable law"". Therefore, the foreclosure and sale are void, invalid, and without force or effect, for Defendants failure to comply with conditions precedent prior to exercising the Statutory Power of Sale. (See: Martins v. Federal Housing Finance Agency, et al., C.A. No. 15-235-M-LDA, United States District Court, D. RI (Oct. 2016)). (See Also: In re Demers, 511 B.R. 233, 238, 239 (Bankr. D.R.I. 2014)).

## ALLEGATIONS OF THE DUBOIS REPRESENTATIVE PLAINTIFF

37.     The Dubois Representative Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

38.     The Dubois Representative Plaintiff brings these claims on behalf of himself and all others so similarly situated.

39.     On August 16, 2002, the Dubois Representative Plaintiff was granted the subject property. The deed evidencing said conveyance was recorded in the City of East Providence, Clerk's Office, Land Evidence Records in Book 1803 at Page 146 on August 19, 2002.

40.     On June 30, 2006, the Dubois Representative Plaintiff executed a mortgage and note both in the amount of Two Hundred Sixty-Five Thousand Five Hundred and 00/100 ($265,500.00) Dollars, to Argent Mortgage Company, LLC. ("Dubois Mortgage/Note"). Said mortgage was

secured against the subject property and recorded in the City of East Providence Land Evidence Records in Book 2691 at Page 194 on July 7, 2006. ("The Dubois Mortgage").

41.    The Dubois Mortgage states at paragraph 22, in pertinent part as follows;

> 22. Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and <u>may invoke the STATUTORY POWER OF SALE and any other remedies permitted by "applicable law".</u>  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

> If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15.  Lender shall publish the notice of sale, and the <u>Property shall be sold in the manner prescribed by "applicable law".</u>  Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitles to it.

> (Underlined Emphasis added).

42.    On January 20, 2009, Argent Mortgage Company, LLC purportedly assigned the Dubois Mortgage to Deutsche Bank.  Said assignment was recorded in the City of East Providence Land Evidence Records in Book 3040 at Page 30 on February 25, 2009.

43.    Subsequently, Ocwen became the servicer of the Dubois Mortgage.

44.     On July 1, 2015, R.I.G.L. § 19-14.11-1 became effective. Said statute requires that all third-party residential mortgage servicers be licensed by the Rhode Island Department of Business Regulation Division of Banking. R.I.G.L. § 19-14.11-1 states;

> § 19-14.11-1 License required. [Effective July 1, 2015.]. – (a) No person shall act as a third-party loan servicer, directly or indirectly, for a loan to a Rhode Island borrower without first obtaining a license under this chapter from the director or the director's designee.
>
> (b) No license shall be required of:
>
> (1) A depository institution, or an affiliate or subsidiary of a depository institution, that is controlled by, or under common control with, the depository institution and subject to the regulatory authority of the primary regulator of the depository institution.
>
> (2) A lender licensed under chapter 14 of title 19 that retains the servicing rights on a loan originally closed in the lender's name and subsequently sold, in whole or in part, to a third-party, provided that the provisions of §§ 19-14.11-2 (segregated accounts) and 19-14.11-4 (prohibited acts and practices) of this chapter shall apply to such lender.
>
> (3) A debt-management company licensed in this state when engaged in activities permitted pursuant to its debt-management license.
>
> (4) An attorney licensed in this state when collecting a debt on behalf of a client.
>
> (5) Bona-fide nonprofit, organizations, exempt from taxation under section 501(c) of the Internal Revenue Code, that are approved by the Department of Housing and Urban Development as housing counseling agencies; that have a physical location in Rhode Island; and that lend state or federal funds.

45.     Further, R.I.G.L. § 19-14-26 sets criminal penalty for violations of R.I.G.L. Title 19, and states;

> § 19-14-26. Penalty for violations.
>
> Any person and the several members, officers, directors, agents, and employees of any person who violate or participate in the violation of any of the applicable provisions of this title, or any regulation promulgated under this title, is guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than one thousand dollars ($1,000) or by imprisonment not exceeding one year, or both. Each violation constitutes a separate offense. Complaints under the provisions of this

chapter may be made by the director, or the director's designee, and shall not be required to give surety for costs. The attorney general shall prosecute all complaints under this chapter.

46.     The Dubois Representative Plaintiff alleges, that from July 1, 2015 through September 28, 2017, including on August 4, 2017 and September 26, 2017, Ocwen was not a licensed third-party servicer in the State of Rhode Island pursuant to R.I.G.L. § 19-14.11-1.

47.     On April 20, 2017, The Rhode Island Department of Business Regulation, Division of Banking issued an Emergency Order pursuant to R.I.G.L. 42-35-14(c) directing Ocwen to immediately cease and desist from all unlicensed activity in the State of Rhode Island, including without limitation, acting as a third-party loan servicer. (See: Exhibit 1; Consent Order Id. at ¶23(c)).

48.     The Dubois Representative Plaintiff alleges, that on or about August 4, 2017, Ocwen, acting as third-party servicer on behalf of Deutsche Bank, caused to be sent to the Dubois Representative Plaintiff a Notice of Mortgagee Foreclosure Sale. Said Notice of Mortgagee Foreclosure Sale stated a sale date of September 26, 2017. Ocwen also caused to published said notice. Such actions are in violation of R.I.G.L. § 19-14.11-1, in violation of and in blatant disregard for the Emergency Order, subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, and are void, invalid, and without force and effect, for Defendants failure to comply Applicable Law as a condition precedent prior to exercising the Statutory Power of Sale.

49.     On September 26, 2017, Ocwen, acting as third-party mortgage servicer for Deutsche Bank foreclosed the Dubois Mortgage and sold the subject property at mortgagee's foreclosure sale. Such action is in violation of R.I.G.L. § 19-14.11-1, in violation of and in blatant disregard for the Emergency Order, subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-

14-26, and is void, invalid, and without force and effect, for Defendants failure to comply Applicable Law as a conditions precedent prior to exercising the Statutory Power of Sale.

50.     Subsequently, Ocwen caused a foreclosure deed to be recorded in the City of East Providence Clerk's Office Land Evidence Records.  Such action is in violation of R.I.G.L. § 19-14.11-1, subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, and is void, invalid, and without force and effect, for Defendants failure to comply applicable law as a condition precedent prior to exercising the Statutory Power of Sale.

51.     The Dubois Representative Plaintiff alleges, that the foreclosure and sale are in breach of paragraph 22 of the Dubois Mortgage which requires that "…[the Lender] may invoke the STATUTORY POWER OF SALE and any other remedies [as] permitted by "applicable law"…" (Emphasis Added).  As such, all foreclosure actions (including notice, foreclosure, and sale) taken by the Lender, and/or their officers, directors, agents, and employees, are subject to ""applicable law"" and the property secured by the Dubois Mortgage can only be sold in a manner prescribed by and subject to ""applicable law"".  As all actions of Ocwen in foreclosing and conducting mortgagee's foreclosure sale are in violation of R.I.G.L. § 19-14.11-1 and the Emergency Order, and subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26,  Ocwen and Deutsche Bank failed their obligation to the Representative Plaintiff to ensure that those actions were conducted in a manner subject to  and prescribed by ""applicable law"".  As all actions of Ocwen in foreclosing and conducting mortgagee's foreclosure sale are in violation of R.I.G.L. § 19-14.11-1 and the Emergency Order, Ocwen and Deutsche Bank failed their obligation to the Representative Plaintiff to ensure that those actions were conducted in a manner prescribed by "applicable law" thus breaching the Dubois Mortgage and for failing to first comply with the terms of the mortgage prior to exercising the power of sale.

52.     As such, the notice, publication, foreclosure and sale are in breach of the terms of paragraph 22 of the Dubois Mortgage contract due to Defendants failure to foreclose and sell in the manner prescribed by ""applicable law". Therefore, the foreclosure and sale are void, invalid, and without force or effect, for Defendants failure to comply applicable law as a conditions precedent prior to exercising the Statutory Power of Sale. (See: Martins v. Federal Housing Finance Agency, et al., C.A. No. 15-235-M-LDA, United States District Court, D. RI (Oct. 2016)). (See Also: In re Demers, 511 B.R. 233, 238, 239 (Bankr. D.R.I. 2014)).

## CLASS ALLEGATIONS

53.     The Representative Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

54.     Plaintiffs bring this action as a Class Action pursuant to Fed. R. Civ. P. Rule 23.

55.     The Representative Plaintiffs sue on behalf of themselves and all homeowners or former homeowners wherein Defendants breached the terms of the Representative Plaintiffs and Class Members mortgages by failing to foreclose and sell in the manner prescribed by ""applicable law"" when conducting foreclosures and mortgagee's sales between July 1, 2015 through September 29, 2017, in violation of R.I.G.L. § 19-14.11-1 and in violation of the Emergency Order issued by the Rhode Island Department of Business Regulation Division of Banking, ordering that Ocwen immediately cease and desist all unlicensed activity as a third-party loan servicer.

56.     The gravity of harm to the Representative Plaintiffs and members of the class resulting from the Defendants wrongdoing outweighs any conceivable reasons, justifications and/or motives of said Defendants for engaging in such unfair acts and practices.

57.     Defendants conduct was unfair, oppressive, and contrary to public policy and the generally recognized standards applicable to the consumer lending business.

58.     The Representative Plaintiffs and members of the class suffered quantifiable damages such as loss of equity in their homes, money spent on funding bankruptcy, legal defense of foreclosure and eviction, and moving and relocation expenses.

59.     The Representative Plaintiffs and members of the class have suffered general damages such as loss of property interest, negative impact to credit ratings, loss of their homes, lost opportunities to rectify their situations through loss mitigation and mediation of their mortgage delinquencies, and extreme mental and emotional distress.

60.     The Representative Plaintiffs and members of the class seek actual, exemplary, punitive, and monetary damages.

61.     The Representative Plaintiffs claim on behalf of themselves and all others so similarly situated that the Defendants breaches of mortgage contracts by violating R.I.G.L. § 19-14.11-1, violating the Emergency Order issued by the Rhode Island Department of Business Regulation Division of Banking ordering that Ocwen immediately cease and desist all unlicensed activity as a third-party loan servicer, and failure to comply with applicable law as a condition precedent prior to exercising the Statutory Power of Sale, are the direct causes of the harms alleged herein.

62.     Representative Plaintiffs, on behalf of themselves and all others so similarly situated, claim that all foreclosures that occurred as a result of any foreclosure notices sent or published during the time in which Ocwen was not licensed as a third-party servicer are null and void for failure to comply with the condition precedent to Statutory Power of Sale outlined in the mortgages that the Defendants foreclose in the manner subject to and as prescribed by ""applicable law"".

63.     Excluded from the class are governmental entities, the Defendants, their affiliates and subsidiaries, the Defendants current employees and current or former officers, directors, agents, representatives, their family members, the members of this Court and its staff.

64.     The Representative Plaintiffs do not know the exact size or identities of the members of the class, since such information is in the exclusive control of Defendants. The Representative Plaintiffs believe that the class encompasses hundreds of individuals whose identities can be readily ascertained from Defendants books and records.  Therefore, the class is so numerous that joinder of all members is impracticable. (i.e. Numerosity).

65.     The Representative Plaintiffs and all members of the class have been subject to and affected by the same conduct.

66.     The questions of law and fact are common to the class and predominate over any questions affecting only individual members of the class. (i.e. Commonality).

67.     The claims of the Representative Plaintiffs are typical of the claims of the class and do not conflict with the interests of any other members of the class in that the Representative Plaintiffs and the other members of the class were subject to the same conduct. (i.e. Typicality).

68.     The Representative Plaintiffs will fairly and adequately represent the interests of the class as a whole.  The Representative Plaintiffs are committed to the vigorous prosecution of the class claims and have retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, wrongful foreclosure actions. (i.e. Adequacy).

69.     A Class Action is superior to other methods for the fast and efficient adjudication of this controversy.  A class action regarding the issues in this case does not create any problems of manageability.

70.     The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

71. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

72. It is not in the best interest of members of the class to individually control the prosecution or defense of separate actions.

73. The specific extent and nature of any litigation concerning the controversy already commenced by or against members of the class is minimal.

74. It is desirable to concentrate the litigation of the claims in this particular forum.

75. There are little to no difficulties likely to be encountered in the management of a classification.

## COUNT I
## BREACH OF CONTRACT AND FAILURE TO COMPLY WITH CONDITIONS PRECEDENT PRIOR TO EXERCISE THE STATUTORY POWER OF SALE

76. The Representative Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

77. The Representative Plaintiffs bring these claims on behalf of themselves and all others so similarly situated.

78. In Rhode Island, the right to exercise the power of sale in a mortgage is derived from the mortgage contract itself.

79. In Rhode Island, a contract containing a requirement that any foreclosure and sale be conducted in a manner subject to and/or as prescribed by ""applicable law"" is construed as a condition precedent, which requires strict compliance.

80. The Andrade Mortgage provides that any notice, foreclosure, and sale be conducted in a manner subject to and as prescribed by ""applicable law"" at paragraph 21. The Dubois Mortgage

contains a substantively similar provision in paragraph 22 of the mortgage. The Representative Plaintiffs allege that all standard mortgage contracts contain this ""applicable law"" obligation of their lenders.

81. In Rhode Island, a mortgagee agreeing to provide notice, foreclose and sell in a manner subject to and/or as prescribed or permitted by "applicable law", must do so as agreed.

82. In Rhode Island, the power to sell by foreclosure sale is derived from the mortgage and statute, and strict compliance with the requirements of paragraph 21 or paragraph 22 of the mortgages are obligations of the mortgagees. Failing to provide notice, foreclose and sell in a manner subject to and/or as prescribed or permitted by "applicable law" pursuant to the mortgage is a breach of contract and renders a foreclosure sale void.

83. As noted above, the Andrade Mortgage states at Paragraph 21 as follows;

> **ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:**
>
> **21. Acceleration; Remedies.** If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, accept <u>as required by "applicable law"</u>, and regardless of any prior forbearance. In such event, Lender, at its option, and <u>subject to "applicable law"</u>, may then thereafter invoke the **STATUTORY POWER OF SALE** and/or any other remedies or take any other actions <u>permitted by "applicable law"</u>. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorney's fees and costs of title evidence.
>
> If Lender invokes the **STATUTORY POWER OF SALE**, Lender shall mail a copy of a notice of sale to Borrower as provided in paragraph 14. Lender shall publish the notice of sale, and <u>the Property shall be sold in the manner prescribed by "applicable law"</u>. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

(Underlined Emphasis Added).

84. The Dubois Mortgage states at paragraph 22, in pertinent part as follows;

22. Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by "applicable law".  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15.  Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by "applicable law".  Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitles to it.

(Underlined Emphasis added).

85. On July 1, 2015, R.I.G.L. § 19-14.11-1 became effective. Said statute requires that all third-party residential mortgage servicers be licensed by the Rhode Island Department of Business Regulation Division of Banking. R.I.G.L. § 19-14.11-1 states;

§ 19-14.11-1 License required. [Effective July 1, 2015.]. – (a) No person shall act as a third-party loan servicer, directly or indirectly, for a loan to a Rhode Island borrower without first obtaining a license under this chapter from the director or the director's designee.

(b) No license shall be required of:

(1) A depository institution, or an affiliate or subsidiary of a depository institution, that is controlled by, or under common control with, the depository institution and subject to the regulatory authority of the primary regulator of the depository institution.

(2) A lender licensed under chapter 14 of title 19 that retains the servicing rights on a loan originally closed in the lender's name and subsequently sold, in whole or in part, to a third-party, provided that the provisions of §§ 19-14.11-2 (segregated accounts) and 19-14.11-4 (prohibited acts and practices) of this chapter shall apply to such lender.

(3) A debt-management company licensed in this state when engaged in activities permitted pursuant to its debt-management license.

(4) An attorney licensed in this state when collecting a debt on behalf of a client.

(5) Bona-fide nonprofit, organizations, exempt from taxation under section 501(c) of the Internal Revenue Code, that are approved by the Department of Housing and Urban Development as housing counseling agencies; that have a physical location in Rhode Island; and that lend state or federal funds.

86.    Further, R.I.G.L. § 19-14-26 sets criminal penalty for violations of R.I.G.L. Title 19, and states;

§ 19-14-26. Penalty for violations.

Any person and the several members, officers, directors, agents, and employees of any person who violate or participate in the violation of any of the applicable provisions of this title, or any regulation promulgated under this title, is guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than one thousand dollars ($1,000) or by imprisonment not exceeding one year, or both. Each violation constitutes a separate offense. Complaints under the provisions of this chapter may be made by the director, or the director's designee, and shall not be required to give surety for costs. The attorney general shall prosecute all complaints under this chapter.

87.    The Representative Andrade Plaintiffs allege that on April 7, 2017, including April 7, 2017 and June 1, 2017, Ocwen was not a licensed third-party servicer in the State of Rhode Island pursuant to R.I.G.L. § 19-14.11-1.

88. On or about April 7, 2017, Ocwen, acting as third-party servicer on behalf of HSBC, caused to be sent to the Andrade Plaintiffs a Notice of Mortgagee Foreclosure Sale. Said Notice of Mortgagee Foreclosure Sale stated a sale date of June 1, 2017.

89. The Representative Andrade Plaintiffs allege, on April 20, 2017, The Rhode Island Department of Business Regulation, Division of Banking issued an Emergency Order pursuant to R.I.G.L. 42-35-14(c) directing Ocwen to immediately cease and desist from all unlicensed activity in the State of Rhode Island, including without limitation, acting as a third-party loan servicer. (See: Exhibit 1; Consent Order Id. at ¶23(c)).

90. The Andrade Representative Plaintiffs allege, that on June 1, 2017, Ocwen, acting as third-party mortgage servicer for HSBC foreclosed the Andrade Mortgage and sold the subject property at mortgagee's foreclosure sale. Such action is in violation of R.I.G.L. § 19-14.11-1, in violation of and in blatant disregard for the Emergency Order, subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, and is void, invalid, and without force and effect, for Defendants failure to comply with applicable law as a conditions precedent prior to exercising the Statutory Power of Sale.

91. The Andrade Representative Plaintiffs allege, that on July 12, 2017, Ocwen, while still under the command of the aforenoted Emergency Order[2], and without Rhode Island licensure as a third-party servicer, caused a foreclosure deed (Exhibit 2) to be recorded in the City of Pawtucket Clerk's Office Land Evidence Records in Book 4111 at Page 192. Such action is in violation of R.I.G.L. § 19-14.11-1, subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, and in breach of the ""applicable law"" provisions to the Statutory Power of Sale in the

---

[2] Ocwen entered into a Consent Order with the R.I. Department of Business Regulation Division of Banking on September 29, 2017, granting them License to act as a third-party servicer pursuant to R.I.G.L. § 19-14.11-1. (See: Exhibit 1).

mortgage contract and is void, invalid, and without force and effect, for Defendants failure to comply with conditions precedent prior to exercising the Statutory Power of Sale.

92.     The Andrade Representative Plaintiffs allege, that the foreclosure and sale are in breach of paragraph 21 of the Andrade Mortgage, which requires that, "…subject to "applicable law", [Lender] may then thereafter invoke the **STATUTORY POWER OF SALE** and/or any other remedies or take any other actions permitted by "applicable law"…" (Emphasis Added). As such, all foreclosure actions (including notice, foreclosure, and sale) taken by the Lender, and/or their officers, directors, agents, and employees, are subject to ""applicable law"" and the property secured by the Andrade Mortgage can only be sold in a manner prescribed by and subject to ""applicable law"".   As all actions of Ocwen in foreclosing and conducting mortgagee's foreclosure sale are in violation of R.I.G.L. § 19-14.11-1 and the Emergency Order, and subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, Ocwen and HSBC failed their obligation to the Representative Plaintiffs to ensure that those actions were conducted in a manner subject to  and prescribed by ""applicable law"", thus breaching the Andrade Mortgage and for failing to first comply with the terms of the mortgage prior to exercising the power of sale.

93.     As such, the notice, publication, foreclosure and sale are in breach of the terms of paragraph 21 of the Andrade Mortgage contract due to Defendants failure to foreclose and sell in the manner prescribed by and subject to ""applicable law"". Therefore, the foreclosure and sale are void, invalid, and without force or effect, for Defendants failure to comply with conditions precedent prior to exercising the Statutory Power of Sale. (See: Martins v. Federal Housing Finance Agency, et al., C.A. No. 15-235-M-LDA, United States District Court, D. RI (Oct. 2016)). (See Also: In re Demers, 511 B.R. 233, 238, 239 (Bankr. D.R.I. 2014)).

94.     The Dubois Representative Plaintiff alleges, that from July 1, 2015 through September 28, 2017, including August 4, 2107 and September 26, 2017, Ocwen was not a licensed third-party servicer in the State of Rhode Island pursuant to R.I.G.L. § 19-14.11-1.

95.     The Dubois Representative Plaintiff alleges, on April 20, 2017, The Rhode Island Department of Business Regulation, Division of Banking issued an Emergency Order pursuant to R.I.G.L. 42-35-14(c) directing Ocwen to immediately cease and desist from all unlicensed activity in the State of Rhode Island, including without limitation, acting as a third-party loan servicer. (See: Exhibit 1; Consent Order Id. at ¶23(c)).

96.     The Dubois Representative Plaintiff alleges, that on or about August 4, 2017, Ocwen, acting as third-party servicer on behalf of Deutsche Bank, caused to be sent to the Dubois Representative Plaintiff a Notice of Mortgagee Foreclosure Sale. Said Notice of Mortgagee Foreclosure Sale stated a sale date of September 26, 2017. Ocwen also caused to published said notice. Such actions are in violation of R.I.G.L. § 19-14.11-1, in violation of and in blatant disregard for the Emergency Order, subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, and are void, invalid, and without force and effect, for Defendants failure to comply with applicable law as a condition precedent prior to exercising the Statutory Power of Sale.

97.     On September 26, 2017, Ocwen, acting as third-party mortgage servicer for Deutsche Bank foreclosed the Dubois Mortgage and sold the subject property at mortgagee's foreclosure sale. Such action is in violation of R.I.G.L. § 19-14.11-1, in violation of and in blatant disregard for the Emergency Order, subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, and is void, invalid, and without force and effect, for Defendants failure to comply with applicable law as a condition precedent prior to exercising the Statutory Power of Sale.

98.     Subsequently, Ocwen caused a foreclosure deed to be recorded in the City of East Providence Clerk's Office Land Evidence Records. Such action is in violation of R.I.G.L. § 19-14.11-1, subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, and is void, invalid, and without force and effect, for Defendants failure to comply with applicable law as a conditions precedent prior to exercising the Statutory Power of Sale.

99.     The Dubois Representative Plaintiff alleges, that the foreclosure and sale are in breach of paragraph 22 of the Dubois Mortgage which requires that "…[the Lender] may invoke the STATUTORY POWER OF SALE and any other remedies [as] permitted by "applicable law"…" (Emphasis Added). As such, all foreclosure actions (including notice, foreclosure, and sale) taken by the Lender, and/or their officers, directors, agents, and employees, are subject to ""applicable law"" and the property secured by the Dubois Mortgage can only be sold in a manner prescribed by and subject to "applicable law". As all actions of Ocwen in noticing, foreclosing and conducting mortgagee's foreclosure sale are in violation of R.I.G.L. § 19-14.11-1 and the Emergency Order, and subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, Ocwen and Deutsche Bank failed their obligation to the Representative Plaintiff to ensure that those actions were conducted in a manner subject to and prescribed by "applicable law".

100.    As all actions of Ocwen in foreclosing and conducting mortgagee's foreclosure sale are in violation of R.I.G.L. § 19-14.11-1 and the Emergency Order, Ocwen and Deutsche Bank failed their obligation to the Representative Plaintiff to ensure that those actions were conducted in a manner prescribed by "applicable law" thus breaching the Dubois Mortgage and for failing to first comply with the terms of the mortgage prior to exercising the power of sale.

101.    As such, the notice, publication, foreclosure and sale are in breach of the terms of paragraph 22 of the Dubois Mortgage contract due to Defendants failure to foreclose and sell in the manner prescribed by ""applicable law". Therefore, the foreclosure and sale are void, invalid, and without force or effect, for Defendants failure to comply with applicable law as a conditions precedent prior to exercising the Statutory Power of Sale.

102.    All mortgage contracts of the Representative Plaintiffs and members of the class contain the same obligation of the Defendants to foreclose in a manner prescribed by "applicable law".

103.    The mortgage contracts entered into by the Representative Plaintiffs and members of the class constitute valid offers.

104.    Upon the Representative Plaintiffs and members of the class executing those mortgage contracts and giving them to their Lenders, their Lenders accepted those offers.

105.    Alternatively, the Representative Plaintiffs and class members execution of those mortgage contracts thereby giving security interests in their property to their Lenders constitute offers. Acceptance of those offers occurred when Defendants accepted payments made by the Representative Plaintiffs and members of the class pursuant to their mortgage contracts.

106.    The mortgage contracts were supported by consideration.  The Representative Plaintiffs and class members payments to Defendants constitutes consideration.

107.    The Representative Plaintiffs and members of the class, and Defendants thereby formed valid contracts and the Representative Plaintiffs and class members were, are, and remain ready willing and able to perform under those contracts.

108.    Defendants breached the mortgage contracts made with the Representative Plaintiffs and class members by refusing to honor the terms of those mortgage contracts by failing to abide by "applicable law" when foreclosing and conducting mortgagee's foreclosure sales.

109. There was no compliance with the terms of the mortgages to exercise the statutory power of sale as indicated above.

110. No Foreclosure Notice was sent to the Representative Plaintiffs or class members which specifically complied with the condition precedent obligations to foreclosure of the Lender as set forth in said mortgage contracts.

111. The Defendants noticed, published, foreclosed and conducted sales of the Representative Plaintiffs and class members property, in violation of R.I.G.L. § 19-14.11-1, in violation of an Emergency Order issued by the R.I. Department of Business Regulation Division of Banking, and are subject to prosecution by the R.I. Attorney General pursuant to R.I.G.L. § 19-14-26, which breached the mortgages and failed to satisfy the condition precedent obligations to notice, foreclose, and sell the property of the Representative Plaintiffs and class members subject to and prescribed by "applicable law".

112. Due to these failures to comply with the terms of those mortgages, no entity was contractually authorized to exercise the statutory power of sale and notice, publish, foreclose and sell at mortgagee's sale the properties of the Representative Plaintiffs and members of the class. These actions constitute a breach of contract, and failure to abide by conditions precedent as stated in the mortgages of the Representative Plaintiffs and class members, resulting in damages to the Representative Plaintiffs and members of the class.

113. As a result of the Defendants improper and invalid notices, publications, and exercises of the statutory power of sale and purported foreclosure sales, the Representative Plaintiffs and class members mortgage loan accounts were charged fees and costs and expenses for certified mail, advertising costs, legal fees, auctioneer costs and other charges which were reflected in their monthly mortgage statements.

114.     The Representative Plaintiffs and class members have incurred damages in hiring attorneys, in regard to the improper actions of Defendants in noticing, and seeking to conduct and/or conducting foreclosures and sales without first complying with "applicable law" as conditions precedent as required by the mortgages of the Representative Plaintiffs and class members.

115.     The Representative Plaintiffs and class members have also incurred mental and emotional injuries and damages due to the improper forecloses and sales of their properties by Defendants without first complying with "applicable law" as conditions precedent as required by the mortgages of the Representative Plaintiffs and class members.

116.     The Representative Plaintiffs and class members have suffered harm and are threatened with additional harm from Defendants breaches, including but not limited to higher principle balances, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to them, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default.

117.     The Defendants breaches of contract and failure to comply with conditions precedent as noted herein above, are the direct cause of the harms alleged herein and not the Representative Plaintiffs and class members failure to make their mortgage payments.

118.     Therefore, the Representative Plaintiffs and members of the class would not have suffered the foreclosures, sales, or the harms as noted herein were it not for the Defendants breaches of the mortgage contracts and failure to comply with "applicable law" as conditions precedent as required by the mortgages of the Representative Plaintiffs and class members as noted herein.

119.     The Representative Plaintiffs and members of the class are entitled to a declaratory judgment determining that the notices, publications, foreclosures, and mortgagee's foreclosure

sales of their properties are void due to the Defendants' failure to comply with the condition precedent obligations to notice, foreclose, and sell in a manner prescribed by, permitted by, and subject to ""applicable law"",  pursuant to the mortgage contracts.

120.    The Representative Plaintiffs and members of the class are entitled to cancellation of costs and fees assessed to them for wrongful foreclosure, together with additional damages.

121.    The Representative Plaintiffs and members of the class are entitled to be returned to their status and circumstances prior to the foreclosures, and sales of their properties.

122.    The Representative Plaintiffs and members of the class are entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

Dated: August 13, 2019

Respectfully Submitted,
The Representative Plaintiffs,
On behalf of themselves and all those
So similarly situated
By their Attorney,


/s/ Todd S. Dion
Todd S. Dion Esq. (#6852)
15 Cottage Avenue, Suite 202
Quincy, MA 02169
401-965-4131 Phone
401-270-2202 Fax
toddsdion@msn.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2019, a copy of the foregoing document, filed through the CM/ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on the parties listed on the NEF as not receiving electronic notice.

/s/ Todd S. Dion
Todd S. Dion