```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF RHODE ISLAND



     * * * * * * * * * * * * *  CIVIL ACTION
     ARTUR ANDRADE, ET AL       *  18-00385-WES
                                *
     VS.                        *  JULY 22, 2019
                                *
     OCWEN LOAN SERVICING, LLC, *  PROVIDENCE, RI
     ET AL                      *
     * * * * * * * * * * * * *


            HEARD BEFORE THE HONORABLE LINCOLN D. ALMOND

                        MAGISTRATE JUDGE

     (Defendants' Motion to Dismiss and Plaintiff's Motion

     to Amend)
```

**APPEARANCES**:

```
FOR THE PLAINTIFF:          TODD S. DION, ESQ.
                            Law Office of Todd S. Dion,
                            Esq.
                            628 Park Avenue
                            Suite 2C
                            Cranston, RI  02910

FOR THE DEFENDANTS:         SAMUEL C. BODURTHA, ESQ.
                            Hinshaw & Culbertson, LLP
                            56 Exchange Street
                            Providence, RI  02903

Transcript Prepared By:     Anne M. Clayton
                            4617 Emann Lane
                            Melbourne, FL  32935
```

1          * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

2          THE COURT:  We are on the record in the matter

3    of Andrade versus Ocwen Loan Servicing, 18-385, and

4    before the Court today for argument on Defendants'

5    motion to dismiss, ECF filing No. 7, and the motion to

6    amend filed by Plaintiff, ECF filing 13.

7          Will the attorneys present for this hearing

8    identify themselves for the record, please.

9          MR. DION:  Good morning, your Honor.  Attorney

10   Todd Dion on behalf of the Plaintiff.

11         THE COURT:  Good morning.

12         MR. BODURTHA:  Good morning, your Honor.  Sam

13   Bodurtha on behalf of the Defendants.

14         THE COURT:  Good morning.

15         So I've reviewed the briefing, and I think the

16   most efficient way to handle the hearing is to hear

17   first from Mr. Dion to sort of lay out for me why he

18   believes an amendment is warranted here, and why he

19   thinks the amended complaint states viable claims.

20         Mr. Bodurtha, you can then respond to that.

21   I'll let you reply and we'll see where that takes us.

22         MR. BODURTHA:  Okay.  Thank you.

23         MR. DION:  Thank you.

24         Your Honor, one of the most basic tenets or

25   foundations of recent foreclosure law in Rhode Island

1   is best described in the <u>Bucci</u> case, where it was

2   explained by the Rhode Island Supreme Court that the

3   power to invoke the statutory power of sale derives

4   from the words of the mortgage contract and compliance

5   with those terms.

6        The words of the mortgage contract in this case

7   clearly and plainly state that the lender may invoke

8   the statutory power of sale, quote, "subject to

9   applicable law."

10       The mortgage states and reiterated that

11   applicable law must be complied with, and I would argue

12   must be strictly complied with in order to invoke

13   statutory power of sale.

14       THE COURT:  So that's your Count II in I guess

15   the original and the proposed Amended Complaint, right?

16       MR. DION:  Yes, your Honor.  The main argument

17   is based on the breach of contract claim, the Count II

18   claim.  That's really where the meat of this case is.

19       THE COURT:  So let me ask you just a practical

20   question.  So I noted I believe it was in your reply

21   brief where you made the same basic point where you

22   said -- I'm trying to find the particular page.

23       You described the proposed Amended Complaint as

24   a straight-forward state law contract theory alleging

25   that the Defendants failed to foreclose in the manner

1    prescribed by applicable law, et cetera.

2         So my question would be why do you even need

3    Count I?  So as I read Count I, you're proposing to

4    amend Count I to seek a declaratory judgment and that

5    certain laws weren't followed and that, therefore, the

6    foreclosure was void, which I think takes the

7    declaratory judgment sort of one step beyond what it

8    should be, right?  You're asking for more affirmative

9    relief.

10        But Count II would necessarily require the Court

11   to undertake a determination, since it's based on the

12   requirement that you say is in the contract to comply

13   with applicable law, it would require the Court to

14   determine what's applicable law and whether it was

15   followed, right?

16        MR. DION:  Yes, your Honor.  That's correct.

17   And in fact, now that I have reviewed what I had filed

18   and I would even concede as to Count I and just proceed

19   on Count II.  I'm really looking for breach of contract

20   claims here in this case.

21        THE COURT:  All right.  That makes more sense to

22   me, and I think that could focus our discussion in

23   today.  I think it is somewhat duplicative.

24        Continue then.  Why does Count II as set

25   forth -- I mean, I understand the rules of amendment

1    and we should be liberal in granting amendments to

2    parties in cases, but also we have the discretion to

3    deny amendment where a claim doesn't state a viable

4    cause of action.

5         So tell me a little bit more about Count II.

6         MR. DION:  Your Honor, as to the contract claim,

7    the Rhode Island state cases following <u>Bucci</u> as well as

8    cases from this Court and the Rhode Island Bankruptcy

9    Court have recognized that the foreclosure process and

10   the statutory power of sale in Rhode Island is itself

11   advantageous to the banks because the power of sale

12   gives them the power to take property without judicial

13   oversight; therefore, the terms of the mortgage

14   document must be strictly complied with in order to

15   foreclose.

16        This concept was recognized by Bankruptcy Judge

17   Finkle in the <u>Demers</u> decision and by this Court in

18   Judge McConnell's <u>Martins</u> decision, and I believe most

19   similarly to this case in the <u>Dan-Harry</u> decision by

20   Magistrate Sullivan and Chief Judge Smith.

21        These cases recognize that the terms of the

22   mortgage especially when related to foreclosure are

23   condition precedents to foreclosure.

24        And I would argue that it certainly is a

25   condition precedent to foreclose in this case for the

1   lender or mortgagee servicer to comply with applicable

2   state law related to the licensing of servicers in

3   Rhode Island, and that statute is particularly

4   mentioning illegal foreclosures as a prohibited act for

5   unlicensed servicers under the statute.

6          Now, the Defendants, of course, are trying to

7   make a similar argument as the defendants made in the

8   Dan-Harry case that the plaintiffs are trying to

9   enforce a regulation through the back door, but that is

10  not the case here because the claims stem from the

11  contract itself as Bucci and Dan-Harry explain and the

12  clear and plain requirement that the Defendants comply

13  with applicable law in order to foreclose.

14         THE COURT:  So what I got out of Mr. Bodurtha's

15  submissions, and he can correct me when he gets up if

16  I'm misreading them, is he points to this consent order

17  and says, Well, everything was resolved and there is no

18  violation of state law, there was authority to conduct

19  the foreclosures at the relevant time.

20         MR. DION:  The law was enacted -- I believe that

21  argument is forgetting about the fact that the law was

22  enacted in 2014.  So we have approximately two years

23  where the Defendant was conducting foreclosures and

24  collecting payments without a license in violation of

25  the statute, which I'd also like to mention provides

1    for criminal penalties, I believe.

2            So the cease-and-desist order and the subsequent

3    consent order that superseded it, I believe that

4    focusing on those orders does not take away from the

5    fact that Ocwen was in violation of the Rhode Island

6    statute well before the cease-and-desist order came

7    into existence, but that was with the proposed Amended

8    Complaint reflects to expand the pool of plaintiffs

9    since the law prohibiting unlicensed servicers from

10   conducting foreclosures was enacted in 2014.

11           The Defendants made no effort to comply with the

12   applicable law and become licensed until the

13   cease-and-desist order, had been, in fact, conducting

14   foreclosures without a license --

15           THE COURT:  Just so the record is clear, I think

16   I got from your pleadings and doing preparation for

17   this hearing that the statute was effective July 1st,

18   2015?

19           MR. DION:  Yes, yes, your Honor.  I apologize.

20   That is when an amendment defining third-party loan

21   servicers was enacted.  Yes.  So it would be July 2015,

22   not 2014.

23           THE COURT:  I just want to make sure we're all

24   on the same page.  All right.

25           MR. DION:  With regard to the consent order and

1    the Defendants' contention that it supersedes the cease

2    and desist, there's nothing in the consent order that

3    specifically says that the consent order was to nullify

4    the cease and desist retroactively.  And if the Court

5    was inclined to think so, I believe that that should be

6    construed as an ambiguity that should be argued at

7    summary judgement rather than a motion to dismiss or

8    motion to amend where the allegations in the Complaint

9    are to be viewed in the light most favorable to the

10   Plaintiff.

11          THE COURT:  All right.  Anything further, sir?

12          MR. DION:  No, your Honor.

13          THE COURT:  All right.  Thank you.

14          Mr. Bodurtha.

15          MR. BODURTHA:  Thank you, your Honor.

16          So I'm going to limit what we're discussing here

17   to the contract claim.  It's my understanding that

18   we're not talking about a direct action under the

19   statute or a request for a declaratory relief, the

20   statute was violated.

21          THE COURT:  That's my understanding.

22          MR. BODURTHA:  In terms of the contract claim,

23   **Citizens for Preservation of Waterman Lake versus**

24   **Davis**, the 1980 Supreme Court of Rhode Island decision,

25   in that case a group of citizens filed -- and the Town

1      of Glocester filed a lawsuit against a developer,

2      actually someone who was accused of dumping waste into

3      the environment.  And the question for the Supreme

4      Court to consider was whether or not the Town of

5      Glocester and its citizenry actually had a right to

6      enforce a wetlands act violation against this

7      developer.

8            The problem with their claim was, similar to

9      this case, the wetlands act did not allow for a private

10     right of enforcement.  Instead, the wetlands act

11     violations were to be enforced by various public

12     entities, none of which included (Unintelligible).

13           THE COURT:  Are they seeking to enforce here?

14     If I understand --

15           MR. BODURTHA:  Well, let me just get to -- this

16     is a long-winded way of getting to this contract

17     action.

18           THE COURT:  Okay.

19           MR. BODURTHA:  So the town comes in and says,

20     wait a second, we had a contract with Davis.  And

21     because of our contract with Davis and because under

22     every contract there's an implication that you'll

23     comply with existing law, the fact that they have

24     violated the wetlands act, according to us, allows us

25     to sue Davis for breach of contract.  And the Rhode

1    Island Supreme Court said, no, you can't do that

2    because that contract did not create that type of

3    obligation.

4         There was no way that the Rhode Island Supreme

5    Court could imply or infer or find an express provision

6    within the agreement that would allow for the

7    contracting parties to use that contract as an

8    enforcement mechanism.

9         The Court says, "Nor is this a case in which an

10   existing statute expressly creates a specific

11   obligation between the contracting parties.  In such a

12   case, the statute is as much as part of the contract as

13   if the statute had been actually written into the

14   contract."

15        Now, compare that to the Dan-Harry contract.

16   Okay?

17        THE COURT:  I want to talk about this contract.

18        So what does this mortgage say you need to do

19   lawfully or comply with the contract and foreclose.

20        MR. BODURTHA:  So two things.  Number one, in

21   terms of whether a mortgagee must comply, strictly

22   comply with pre-conditions as a pre-condition to

23   foreclosure, Judge McConnell's decision in **Martins**

24   **versus FHFA**, he zeroed in on the notices and the fact

25   that notices were required in order for a mortgagee to

1    foreclose.  And he looked at **Hetco versus Blanchette**

2    and <u>Demers</u> and said, well, if you're going to foreclose

3    under the power of sale and you have these notices that

4    you have to issue, those notices must strictly comply

5    with Paragraph 22 of the standard Fannie Mae Freddie

6    Mac mortgage instrument.

7            THE COURT:  Yep.

8            MR. BODURTHA:  The <u>Martins</u> decision does not

9    stand for the prospect of, Listen, the entire contract

10   must be strictly complied or strictly conformed to.  He

11   didn't say you have to comply with every single piece

12   of applicable law.  He limited his decision to

13   Paragraph 22.

14           So what I would argue to the Court today is when

15   you're considering whether simply meeting applicable

16   law is a strict compliance construct, it's not.

17           I'm not suggesting that my client did not comply

18   with applicable law but I don't believe that a borrower

19   can --

20           THE COURT:  Then is that meaningless language in

21   the contract?

22           So if you're saying there's strict compliance --

23   there would just be compliance, right?

24           MR. BODURTHA:  Correct.  So as long as the

25   mortgage loan servicer is complying with applicable

1    law, then there's no trouble in terms of the contract

2    itself.

3            THE COURT:  And he says you're not, and you say

4    that this consent order essentially retroactively

5    abated, I think was the term you used, any prior

6    non-compliance.

7            MR. BODURTHA:  Well, no.  Before I'm even

8    getting there I'm suggesting to the Court that the

9    servicing statute and the servicing licensing statute,

10   which is a creature of the DBR, enforced by the DBR and

11   penalized by the DBR, cannot be applied as applicable

12   law under the contract because if you consider the

13   difference between the Citizens for Preservation case

14   and the Dan-Harry case on the other side, you can't

15   reach the conclusion that a borrower entered into a

16   contract with a lender with the express or implied

17   agreement that somehow this licensing statute would

18   control the bargain for exchange.

19           If you contrast this case with Dan-Harry, the

20   reason why Dan-Harry can't apply is it's a HUD

21   mortgage.  Right?

22           When you enter into a HUD mortgage, there are

23   certain regulations and controls that you bargain for

24   in that exchange.  One of those is if and when you go

25   into default, your mortgage holder has to have a

1   face-to-face meeting with you.  The mortgage holder has

2   to send you a letter.  They have to set up a time.

3   They actually have to go to your house, knock on the

4   door and have a face-to-face meeting in order to ensure

5   that there is some negotiation or at least a level of

6   work-out option before the foreclosure goes forward.

7        Now, all of that is not in the mortgage, right?

8   But there's a term in a HUD mortgage in Paragraph 9

9   which says in order to complete whatever, whatever,

10  whatever, you've got to comply with HUD regulations.

11       So when a borrower enters in a HUD mortgage and

12  accesses that type of agreement, in doing so they

13  receive those kind of additional contractual guarantees

14  which Magistrate Sullivan viewed as implied terms of

15  the mortgage agreement.

16       So that, yes, in a HUD face-to-face or a HUD

17  regulation mortgage, that particular borrower has the

18  rights to come into court and say breach of contract

19  because HUD regulations are implied here.

20       The same analysis cannot apply to this

21  particular cause of action.

22       THE COURT:  So what does it mean in the mortgage

23  where it talks about subject to applicable law and sold

24  in a manner prescribed by applicable law?  And is that

25  meaningless language?

1          MR. BODURTHA:  No.  It means that everything

2     that my client did prior to foreclosure.  It means that

3     they issued the correct notices.  It means that they

4     went to a statutory power of sale foreclosure.  It

5     means that they had a fair and reasonable sale.  It

6     means in terms of this jurisdiction because clearly the

7     applicable law provision is the way of saying, wow,

8     there are provisions within Rhode Island law that must

9     control.

10          For example, Rhode Island has a mediation

11     statute, right?  In order to notice the sale, you have

12     to give them the notice of the availability of

13     mediation with Rhode Island Housing, right?  And then

14     you go to Rhode Island Housing and if they can work out

15     a deal, they can.  But if not, you get a certification

16     from Rhode Island Housing that says that you can go

17     forward and foreclose.

18          That would be an instance where applicable law

19     would control, right?

20          So in addition to whatever you have to do in

21     order to foreclose, you have to follow the applicable

22     law.

23          Is the licensing statute applicable law?  Not to

24     the terms of this contract.  It can't apply because it

25     wasn't part of the bargained-for exchange and isn't

1    even a law that the borrower can access in order to

2    say, well, this was violated.

3         But consider the fact that -- let's assume that

4    it is applicable law, okay?  So then we'd be going

5    under a contract theory alone, right?

6         There would have to first be a breach.  There

7    would have to be some instant showing that the contract

8    was breached or that applicable law was breached.

9         There's nothing in the record here that would

10   point you to that fact because immediately after the

11   cease-and-desist order, emergency order was issued,

12   Ocwen filed suit against the DBR and asked a Superior

13   Court judge to stay enforcement of this emergency

14   order.  That happens in April of 2017.  Nothing else

15   happens in the litigation, right, for five months.

16        In September of 2017, the DBR comes back, going

17   to court, the case is voluntarily dismissed and a

18   consent order is issued, right, which reinstates

19   Ocwen's ability to service loans, vacates the prior

20   order and everyone goes along their way.

21        Nothing is mentioned within that order in terms

22   of voiding out a foreclosure or some other type of

23   penalty, which in this situation only the DBR could

24   issue.

25        THE COURT:  But why would the consent order deal

1  with that if it's a matter of contract?

2      MR. BODURTHA:  Because it's the province of the

3  DBR to assess whether there's any kind of misuse of it

4  or violation of the servicing statute.  It is not for

5  the average private citizen or borrower to do so.

6  That's the way the statute is set up.  That's the

7  concern here, that saying, well, there's a violation of

8  my contract because their servicing license was under

9  question, that doesn't go to the bargained-for exchange

10  in the terms of the contract.  That goes towards the

11  servicer's relationship with the State of Rhode Island.

12      THE COURT:  Assume they had no license.  Then if

13  they had no license, they weren't legally authorized to

14  administer the foreclosure so, therefore, they didn't

15  do it in compliance with applicable law?

16      MR. BODURTHA:  Right.  They'd be subject to a

17  civil fine, a thousand dollars.

18      THE COURT:  But also, in Mr. Dion's view, they

19  didn't comply with the subject to applicable law and in

20  the manner prescribed by applicable law because they

21  didn't have the appropriate license.

22      MR. BODURTHA:  But how does applicable law apply

23  to this foreclosure when the borrower can't enforce

24  that applicable law?  How can a law that we're all

25  conceding here --

1    THE COURT:  So what is applicable then?

2    MR. BODURTHA:  Well, it would have to be

3    something that the borrower could enforce, right?  The

4    borrower can't come in and try to use some other law

5    out there that he or she doesn't have the right to

6    enforce.  How would that apply to this particular

7    borrower?

8    If the borrower has no private right of action,

9    no one's debating that here.  The private right of

10   action is out.  The declaratory judgment there could be

11   a private right of action is out.  We are not debating

12   whether this particular borrower can apply this law.

13   If we're not debating whether this particular borrower

14   can apply the law, then how can it be applicable law to

15   the contract?

16   It would be one thing if you had the DBR

17   involved in this case.

18   THE COURT:  So who does it have to be applicable

19   to?  It would be applicable to the servicer.

20   MR. BODURTHA:  The contracting parties.  It

21   would have to be applicable to the contracting parties.

22   You couldn't -- for example, Mr. Dion knows these cases

23   very well because he's in Massachusetts.  You couldn't

24   go to Massachusetts and say, Well, 35A applies here

25   because it can't.  It's out of that jurisdiction.

1          The same or similar analysis can be used here in

2     saying, you know what, this servicing statute cannot

3     apply.

4          Now, we took it one step further.  There are

5     provisions within the servicing statute, right,

6     Mr. Dion listed them, are all the violations that may

7     be under Title 19, whatever, whatever (Unintelligible).

8          THE COURT:  I just passed by that.

9          MR. BODURTHA:  Prohibited acts.  19-14.1-4,

10    okay.  There are 19 prohibited acts.  Within those 19

11    prohibited acts, you can go through those acts and

12    figure out that there are separate laws, separate

13    contractual terms, separate federal provisions that

14    might be violated in the event that those are not

15    followed, but you don't file a lawsuit under that

16    prohibited acts and practices.  You have a stand-alone

17    right to do it.

18          The reason why I raise that is to suggest that

19    this doesn't mean that a borrower in Rhode Island is

20    without remedy for some of the prohibited acts that are

21    within that law because they're duplicative of other

22    statutes, whether it's RESPA or TILA or the state laws

23    concerning foreclosure and mediation.

24          All of those laws benefit and apply to the

25    borrowers, right?

1    But whether or not a mortgage loan holder is

2    operating with a servicer under the licensing issued by

3    the DBR can't apply to the borrower, because the

4    borrower has no right to enforce that statute.  That's

5    why the contract claim fails.

6         In the instance of Dan-Harry, the borrower

7    alleged that he never had the HUD face-to-face meeting.

8    That had nothing to do with HUD.  It had nothing to do

9    with the state agency.  It was a singular relationship

10   between the borrower and his lender and his mortgage

11   loan servicer.  Did that face-to-face negotiation take

12   place?  And under those circumstances, Magistrate Judge

13   Sullivan determined, well, you got to comply with that.

14   That's applicable law to the relationship of the

15   contract.

16        But there's nothing here that goes to that

17   point.  You can't actually get to the point of

18   applicable law if one of the two parties to the

19   contract can't even apply the law on their own.  How

20   can you have a contract cause of action, right, when

21   you can't even access the statute on your own.

22        There's another way to look at it.  Martins.

23   Talk about Martins, talk about Bucci, right, strict

24   compliance.  All those guarantees.  The guarantees

25   under the contract, right?  Those are in the contract.

1      Paragraph 22 of the standard Fannie Mae/Freddie Mac

2      mortgage loan instrument provides that in order to

3      proceed with a foreclosure, the foreclosing mortgagee

4      shall give the following notices.  You've got to let

5      them know what the default is.  Thirty days out to

6      cure.  If you don't cure, it's going to be accelerated,

7      et cetera, et cetera, et cetera.  Right?

8           Those are specific bargained-for terms of the

9      contract.  That is entirely different from when we're

10     talking about whether a mortgage holder and their

11     servicer are actually licensed; and if they're not

12     licensed, would they be subject to a penalty by the

13     state DBR.

14          Now, one further step to take.  Let's assume you

15     say, well, this is a contract.  Then let's assume you

16     say, okay, there's applicable law.  Let's assume that

17     you even say that the applicable law was breached.

18     What are the damages?  What is the damage from a

19     mortgage loan servicer conducting an otherwise valid

20     and enforceable foreclosure?  There's no other

21     allegation in here concerning the foreclosure.  What is

22     the damage of the servicer doing that without a

23     license?

24          Certainly in the eyes of the DBR if he did it

25     without the license they'd fine you a thousand dollars,

1   right?  That would go to the state.  But what's the

2   damage to the borrower?  It's not like the borrower

3   wasn't going to be foreclosed otherwise.  There's no

4   challenge to the default.  There's no other servicing

5   violation or standing violation.  There's not even a

6   Paragraph 22 strict compliance claim here by the

7   representative Plaintiff.  Instead, it's just saying,

8   well, this foreclosure is barred because you didn't

9   comply with the servicing statute.  You didn't have a

10  license to service, right?

11          So maybe a borrower says, well, I lost my house.

12  That's damage enough.  Right?  That's always sort of

13  the classic one.  Well, you conducted my foreclosure,

14  you took my house and this should be void.  But aren't

15  they subject to foreclosure as it is?  Shouldn't they

16  have been foreclosed on in the first place?  Is there

17  any challenge to the fact that they were in default;

18  they received a notice of default; they received a

19  notice of sale and they went through foreclosure?  No.

20          And the borrower, not this borrower or any other

21  representative borrower in this case is not going to

22  come to the court and say I wasn't in default.  They

23  wouldn't be part of the class.  All they're going to

24  suggest to the court in an allegation is, well, I was

25  foreclosed at a time when they didn't have a servicing

1    license.

2         So then the question is how were you damaged?  I

3    was foreclosed on.  Then the question is, well,

4    wouldn't you have been foreclosed on, otherwise?  Well,

5    yeah, except they didn't have a servicing license.

6         So what was the particular damage that you

7    suffered as a result of that servicing license?  I lost

8    my house.

9         That's it.  In an instance where you otherwise

10   in a fully valid regardless you lose your house

11   foreclosure.

12        The last element to this case is this.  The

13   Department of Business Regulations issued this

14   emergency cease-and-desist order in April of 2017.

15   (Unintelligible) they went after Ocwen big time.  And

16   at the end of the day the Department of Business

17   Regulation and Ocwen resolved their differences through

18   a consent order avoiding litigation that allowed for

19   Ocwen to proceed in servicing over 6,000 mortgages in

20   the State of Rhode Island.

21        It is a dangerous step to take for the borrower

22   and the Court to go into that negotiation to interpret

23   what was meant, what was intended and to apply

24   additional penalties like voiding on a foreclosure that

25   weren't otherwise discussed as between state agency and

1    mortgage loan servicer.  That's the point we're at

2    right now.

3         What we're talking about right now is a forensic

4    view of how that whole negotiation took place, what did

5    they intend by the consent order.  What did they mean

6    by this paragraph?  What did they mean by this

7    paragraph?

8         I would suggest to the Court that it's not our

9    province to get involved in that type of a negotiation

10   or that type of review or that type of an

11   interpretation.  That's why the law is set up as an

12   enforcement mechanism as between state and licensee and

13   why the statute does not provide for a private right of

14   action.

15        If the statute did provide for a private right

16   of action, then we wouldn't be having this conversation

17   because you could just sue on the statute.  But the

18   fact that it didn't presents a dangerous scenario where

19   we start going in and deciding if there should be some

20   kind of extra penalty or extra measure that needs to be

21   taken in consideration of what the DBR had merely

22   alleged, right?  He could rely on that no court

23   adjudicated whether that cease-and-desist order was

24   proper.

25        If you look at Title 19 and how the

1    cease-and-desist orders operate, the party against whom

2    the cease-and-desist order is made has three days to

3    file a judicial challenge, which is exactly what Ocwen

4    did.  Nobody ever adjudicated whether there was truly a

5    violation.  Nobody ever adjudicated whether the

6    servicing license should just disappear or be

7    invalidated.  That never happened.

8         Instead, the DBR and Ocwen were able to resolve

9    their differences.  They entered into a consent order.

10   That should be the end of the servicing license

11   discussion.

12        Thank you.

13        THE COURT:  Okay.  Thank you.

14        Mr. Dion, I'll give you a chance to respond,

15   sir.

16        MR. DION:  Yes, your Honor.  The borrower here

17   is not trying to enforce applicable laws.  He's trying

18   to enforce the contract.

19        Now, the penalty for a violation 19-14-26,

20   penalty for violations under licensed activities, any

21   person who violates or participates in violation of the

22   applicable provisions of this Title shall be guilty of

23   a misdemeanor and a thousand dollar fine.  It's a crime

24   to conduct unlicensed foreclosures in Rhode Island.

25   And I do believe it would be part of the benefit of my

1    client's bargain that pursuant to the applicable law

2    provision of the contract that the servicer initiating

3    foreclosure activities is not doing so illegally and,

4    in fact, criminal.

5        The <u>Citizens versus Davis</u> case, I believe the

6    contract in that case was not specific enough.  It was

7    just a general provision that they comply with state

8    law.

9        The law in this case is specifically related to

10   foreclosure and the contract states that the

11   foreclosure must be conducted subject to applicable

12   law.  I believe "subject to" are pretty strong words

13   that it's subject to the applicable laws most

14   definitely a statute in which the penalty is a

15   misdemeanor.

16        As far as the <u>Dan-Harry</u> case, yes, that case

17   focused on face-to-face meetings, but it was also a

18   condition precedent that the lender comply with all the

19   HUD regulations, not just the face-to-face meeting

20   regulation.

21        The foreclosure here is the breach.  That is

22   where the breach is, when the foreclosure was

23   conducted, and the relief that my clients are seeking

24   is that the foreclosure be deemed void.

25        That's all I have.

1        THE COURT:  Thank you.

2        So I'm going to take the matter under

3    advisement, and I think the best way to tee this up for

4    Judge Smith is to do so in a Report and Recommendation

5    on the motion to amend, which would be just focused on

6    the viability of the proposed Count II.

7        Again, I think it presents the same issue but

8    rather than adjudicating the motion to dismiss 7, I

9    think on a motion to amend we can apply the 12(b)(6)

10   standard to a proposed count.  So I'd rather deal with

11   it in that context.  That's my initial reaction and

12   recommend that the motion to dismiss, ECF 7,

13   essentially be deemed moot and the legal issue be dealt

14   with in the context of ECF 13, but I will do so in the

15   Report and Recommendation so both sides will have a

16   right to object and seek de novo review from Judge

17   Smith.

18       I am going to take the matter under advisement,

19   and I'll prepare that Report and Recommendation as soon

20   as possible.

21       Thank you for your well-prepared arguments on

22   both sides today, gentlemen.  It's good to see both of

23   you.

24       MR. DION:  Thank you, your Honor.

25       MR. BODURTHA:  Thank you, your Honor.  Good to

1    see you, as well.

2            THE COURT:  Court will be in recess.

3            (Adjourned.)

4            * * * * * * * * * * * * * * * * * * * * * * * * * * * *

C E R T I F I C A T I O N

     I, Anne M. Clayton, Approved Federal Court Transcriber, do hereby certify that the foregoing transcript is a correct transcript prepared to the best of my skill, knowledge and ability from the official digital sound recording of the proceedings in the above-entitled matter.

/s/ Anne M. Clayton

_____

Anne M. Clayton

August 21, 2019

_____

Date