UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| ARTUR ANDRADE, JULIA ANDRADE, On behalf of themselves and all others so similarly situated,<br><br>    *Plaintiffs*,<br>vs.<br>OCWEN LOAN SERVICING, LLC, HSBC BANK , N.A. as trustee for OPTION ONE MORTGAGE LOAN TRUST 2007-HL1<br><br>    *Defendants*. | )<br>)<br>)<br>)<br>)<br>)  CA NO. 18-cv-00385-WES-LDA<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' RESPONSE TO**
**DEFENDANTS' OBJECTION TO REPORT AND RECOMMENDATION**

Pursuant to Fed.R.Civ.P. 72(b)(2) and LR Civ.P. 72(d)(3), Plaintiffs, Artur Andrade and Julia Andrade, on behalf of themselves and all others so similarly situated, submit this response to Defendants' Objection to the Magistrate's Report and Recommendation filed on August 14, 2019. Plaintiffs set forth that the Defendants' Objection to the Report and Recommendation is completely based on non-applicable statutes, unfounded analogies and incorrect conclusions of law as clearly and unequivocally explained in this response.

    I.    **The Defendants' Contention That "the DBR's Decision to Deny Ocwen's Renewal of License Could Not Operate as a Bar to Ocwen's Ongoing Mortgage Servicing" is False Because Ocwen's Third-Party Servicing Application Was a New Application Rather Than a Renewal Application and Ongoing Third-Party Servicing Without "*First Obtaining A License*" Is Specifically Prohibited By Rhode Island Law.**

The Defendants' objection to the RR cites R.I.G.L. § 45-35-14(b) to support their erroneous contention that Ocwen's "ongoing mortgage servicing" was not barred by the DBR's denial of its third-party servicing license. A closer look at the relevant statutes and facts, however, clearly

shows that the Defendants are mischaracterizing the facts surrounding Ocwen's third-party servicing application and ignoring the relevant Rhode Island law regarding third party servicing licenses.

>R.I.G.L 45-35-14(b) states that:
>
>"Whenever a licensee has made timely and sufficient application for the renewal of a license or a new license with reference to any activity of a continuing nature, the *existing license* does not expire until the application has been finally determined by the agency, and, in the case the application is denied or the terms of the new license limited, until the last day for seeking review of the agency order or a later date fixed by order of the reviewing court." (emphasis added)

Throughout Defendants' objection to the RR the Defendants repeatedly refer to Ocwen's application for a third-party servicing license as an application for a "renewal of license". This characterization, however, is not true because the cease and desist order as well as the consent order referred to in the Defendants' objection clearly indicate that Ocwen's application for a third-party servicing license was an application for a new third-party servicing license since Ocwen never had a third-party license in Rhode Island in the first place. Therefore, it is clear that throughout the activity alleged and within the time period alleged from the effective date of the third-party license requirement on July 1, 2015 until the date of the eventual consent order on December 12, 2017, Ocwen was illegally conducting foreclosures in Rhode Island without a third-party servicing license in violation of R.I.G.L. § 19-14-2 and R.I.G.L 19-14-11.1.

While the language of 45-35-14(b) appears to allow "activity of a continuing nature" when a "new license" is "timely and sufficient", in this case this language in the statute is undermined by its stated purpose that "the *existing license* does not expire until the application has been finally determined". In this case there never was an "*existing license*" in the first place. Therefore, the Defendants' reliance on 45-35-14(b) is misplaced by the statutes clear and ordinary language. In

2

support of its dubious position the Defendants cite the Rhode Island Superior Court decision in <u>Bonnet Shores Beach Club Condo Asso. v. R.I. Coastal Res. Mgmt. Council.</u> In the <u>Bonnet Shores</u> case it is clear that the permit in question was a renewal permit that had already been obtained in an earlier year and which did not expire while a renewal application was pending. In this case the key difference from the <u>Bonnet Shores</u> case is that there was no third-party servicing license to expire in the first case. Ocwen was applying for a new third-party servicing license in which the statutes plainly, clearly and specifically say that third-party servicing activity can not be conducted in R.I. without "*first*" obtaining a license. See R.I.G.L 19-14-2 and R.I.G.L 19-14-11.1. In other words, Ocwen could not just submit its application and start servicing or just keep servicing and ignore the July 1, 2015 effective date of 19-14-11.1. Instead, Ocwen needed to either stop servicing until it obtained its third-party servicing license "*first*" or apply for its third-party servicing license in a timely manner "*first*" in order to be a third-party servicer in accordance with Rhode Island law at the effective date of the statute in July 1, 2015. It is clear the Ocwen did neither.

Under the clear and specific language of the multiple statutes concerning the requirement of having a third-party servicing license prior to conducting foreclosures in Rhode Island, it is clear that Ocwen failed to conduct foreclosures in accordance with the Applicable Law provisions of the Plaintiffs' mortgage contracts.

"R.I.G.L 19-14-2(a)(8) License required." states that:

> "No person shall engage within this state in the business of: . . .(8) Servicing a loan, directly or indirectly, as a third-party loan servicer without *first* obtaining a license or registration from the director or the director's designee." (emphasis added)

R.I.G.L. § 19-14-11.1(a) License required" also states:

> "No person shall act as a third-party loan servicer, directly or indirectly, for a loan to a Rhode Island borrower without *first* obtaining a license under this chapter from the director or the director's designee." (emphasis added)

In addition, R.I.G.L 19-14-11.4 (14) specifically list that it is a "Prohibited Act" to "Knowingly or recklessly facilitate the illegal foreclosure of real property collateral." Therefore, since the penalty for a violation of any provision under Chapter 19 Title 14 is a misdemeanor crime under R.I.G.L 19-14-26 it is clear from the statutory scheme under Chapter 19 Title 14 that facilitating foreclosures on real property without a third-party servicing license, as in this case, is a "prohibited act" under R.I.G.L 19-14-11.4 (14).

The language of 19-14-2 and 19-14-11.1 clearly and plainly spell out the legislative intent to not allow any entity to conduct third-party servicing activity until it "*first*" receives a new third-party servicing license from the DBR despite the language of 45-35-14(b). Furthermore, while 42-35-14(b) was enacted in 1956, the third-party licensing requirement statutes in accordance with 19-14-2 and 19-14-11.1 were more recent statutes enacted in 2015 which: 1) clearly and specifically intended to override and trump any notion of allowing such third-party servicing activity that may be erroneously construed in the language of 42-35-14(b) to be "ongoing" and 2) clearly required prospective third-party loan servicers that were subject to scrutiny stemming from the 2008 housing crisis to "*first*" obtain a third-party servicing license in Rhode Island in order to conduct third-party servicing activity, including but not limited to the prohibited act of illegal foreclosures as defined in R.I.G.L 19-14-11.4. The Rhode Island statutory scheme under Chapter 19 Title 14 clearly establish that obtaining a third-party servicing license is a condition precedent to conducting foreclosures. Therefore, in light of the facts and law set forth above it is clear that the Defendants failed to comply with the Applicable Law provisions of the Plaintiffs' mortgage contracts and the foreclosures are void.

4

**II.     The Defendants' Focus on the DBR's Cease and Desist and Consent Orders Fails to Exonerate Ocwen from Conducting the Foreclosures Without "First" Obtaining a Third-Party Servicing License as a Condition Precedent to the Foreclosures Under the Applicable Law Provisions of the Mortgage Contracts.**

In an apparent attempt to confuse, conflate and divert this Court's focus away from the fact that Ocwen was conducting foreclosures in Rhode Island without "*first obtaining*" a third-party servicing license in violation of both R.I.G.L. § 19-15-3 and R.I.G.L. § 19-14-11.1 and in breach of the Applicable Law provisions of the mortgage contracts, the Defendants' objection to the RR devouts a considerable amount of time on the validity of the cease and desist and consent orders issued by the DBR. While the cease and desist and consent orders support the Plaintiffs' factual allegations that Ocwen was in fact conducting illegal foreclosures in Rhode Island without "first obtaining" a third-party servicing license during the relevant time periods, the existence of whether or not the cease and desist order was valid is irrelevant as to whether or not the illegal foreclosures were conducted in accordance with Applicable Law under the mortgage contracts. Regardless of whether or not the cease and desist order was valid or not, the fact still remains that Ocwen was conducting or facilitating foreclosures without "first obtaining" a third-party servicing license in violation of R.I.G.L. § 19-14-2 and R.I.G.L. § 19-14-11.1 and in breach of the condition precedent of foreclosing subject to Applicable Law in accordance with the language of the mortgage contracts. Nevertheless, even if this Court were to consider the Defendants' arguments concerning whether or not the DBR's cease and desist order was valid at the time of the foreclosures in question, a plain and clear reading of the applicable statutes unequivocally shows that the Defendants arguments are unfounded, mischaracterized and simply untrue.

First, the Defendants incorrectly attempt to argue that the issuance of the cease and desist order for Ocwen's third-party servicing activity without "*first obtaining*" a license under R.I.G.L 19-14-23(e) is void because the DBR did not afford Ocwen an opportunity for a hearing upon 3-

5

days-notice. In support of this unfounded and untrue argument the Defendants attempt to draw some analogy to R.I.G.L. § 19-14-15 which does afford a financial institution an opportunity for a hearing upon 3-days-notice concerning the suspension of an *existing* license. The notice and opportunity for a hearing under R.I.G.L. § 19-14-15, however, does not apply to Ocwen's unlicensed third-party servicing activity because such activity did not concern an *existing* third-party servicing license as Ocwen did not yet have a third-party license. Rather, Ocwen's unlicensed third-party servicing activity was clearly and correctly subject to the DBR's authority and jurisdiction to validly order an immediate cease and desist of Ocwen's unlicensed third-party servicing activity under R.I.G.L. § 19-14-23(e).

A reading of the cease and desist order indicates that the DBR ordered Ocwen to not only cease and desist all unlicensed third-party servicing activity but also all lending activity under Ocwen's Lender license which, unlike Ocwen's unlicensed third-party servicing activity, was activity in which Ocwen did have an existing lender license. As the cease and desist states clearly at page 1 "Respondent Ocwen Loan Servicing, LLC, NMLS ID # 1852 holds a Rhode Island Lender License and has applied for a Rhode Island Third Party Loan Servicer License." The Defendants' objection to the RR attempts to confuse, conflate and draw an incorrect analogy between the statutory requirements of the cease and desist order concerning the suspension of Ocwen's existing Lender License and the denial of Ocwen's new third-party servicing license application. Furthermore, the DBR's finding that Ocwen was illegally conducting third-party servicing activity without "first obtaining" a third-party servicing license and the DBR's order that Ocwen cease and desist from conducting third-party servicing activity in Rhode Island which is subject to a $1000.00 fine and a 1 year misdemeanor per violation in accordance with R.I.G.L 19-14-26 factually support the Plaintiffs' well-pled allegations in the Amended Complaint.

Unlike R.I.G.L 19-14-15 which concerns existing licenses such as Ocwen's Lender License, the plain and clear language of R.I.G.L. § 19-14-23(e) concerning Ocwen's non-existing third-party servicing license, offers no opportunity for any such 3-day notice or hearing prior to a cease and desist order for conducting third-party servicing activity in Rhode Island without "*first obtaining*" a license. R.I.G.L. § 19-14-23(e) states in clear English the following:

> "(e) If the Director, or the director's designee, has reason to believe that any person required to be licensed under this chapter is conducting a business without having *first obtained* a license under this chapter, or who, after the denial, suspension, or revocation of a license is conducting that business, the director, or the director's designee, may issue an order to that person commanding him or her to cease and desist from conducting that business. The order shall provide an opportunity to request a hearing to be held not sooner than three (3) days *after* issuance of that order to show cause why the order should not become final. Any order issued pursuant to this section shall become final if nor request for a hearing is received by the director, or the director's designee, within thirty (30) days of the issuance of the order. The order may be served on any person by mailing a copy of the order, certified mail, return receipt requested, and first class mail to that person at any address at which that person has done business or at which that person lives. Any hearing held pursuant to this section shall be governed in accordance with chapter 35 of title 42. If that person fails to comply with an order of the director, or the director's designee, after being afforded an opportunity for a hearing, the superior court for Providence County has jurisdiction upon compliant of the department to restrain and enjoin that person from violating this chapter." (emphasis added).

It is clear from the language of R.I.G.L. § 19-14-23(e) that any hearing afforded under this statute shall occur "not sooner than three (3) days *after* issuance of that order". Therefore, under the clear and plain language of R.I.G.L. § 19-14-23(e) there was no such required 3-day notice and opportunity for a hearing prior to the cease and desist order directing Ocwen to stop its unlicensed third-party servicing activity and the Defendants' attempted analogy to R.I.G.L 19-14-15 is unfounded and incorrect.

The second incorrect and unfounded assertion the Defendants attempt to set forth regarding the cease and desist order's validity concerning Ocwen's unlicensed third-party servicing activity is the Defendants' incorrect contention that the cease and desist order somehow expired after 30

days.  Once again in making this assertion the Defendants attempt to draw an incorrect and unfounded analogy to R.I.G.L. § 19-14-15 which only concerns an *existing* license that is subject to suspension rather than a license that does not yet exist yet as in Ocwen's pending application for a new third-party servicing license.  R.I.G.L. § 19-14-15 states:

> "19-14-15. Suspension of License.  The director, or the director's designee, may, upon three (3) days' notice and an opportunity for hearing, suspend any license for a period not exceeding thirty (30) days, pending investigation"

The clear and plain language of R.I.G.L. § 19-14-15 indicates that both the 3-day notice and opportunity for a hearing as well as the 30-day suspension limit applied only to *existing* licenses.  For the DBR can not suspend a license that does not yet exist nor can they limit such a suspension to 30 days when the license does not yet exist.  Therefore, the Defendants' contention that Ocwen was somehow allowed to conduct unlicensed third-party servicing activity 30 days after the cease and desist order makes no logical sense.  Regardless of the Defendants' strenuous arguments and inapplicable analogies to the contrary, the law and facts remain and are clear from the statutes as well as the cease and desist and consent orders that Ocwen was conducting unlicensed third-party servicing activity without "*first obtaining*" a third-party servicing license from July 1, 2015 through the effective date of the eventual consent order on December 12, 2017 in breach of the Applicable Law condition precedents of the mortgage contracts.

Finally, the Defendants incorrectly argue that the "DBR's Emergency Order Violated Rhode Island's Administrative Procedures for Agency Review of a License" by circling back to R.I.G.L. § 42-35-14(c) (1956) which states that "no revocation, suspension, annulment, or withdrawal of any license is lawful unless . . . notice . . . and . . . opportunity to show compliance . . . for *retention* of the license". (emphasis added).  Once again the Defendants' arguments as to R.I.G.L. § 42-35-14 fall flat because the cease and desist order of Ocwen's unlicensed third-party

8

servicing activity did not concern an existing license or an "ongoing activity" that could survive the clear language of R.I.G.L. § 19-14-2 and 19-14-11.1 which plainly and clearly required that Ocwen "*first obtain*" a license prior to conducting any third-party licensing activity.  The DBR's cease and desist emergency order complied with all requirement concerning Ocwen's unlicensed third-party servicing activity and was not a "revocation, suspension, annulment, or withdrawal" of an existing license and did not concern the "*retention* of the license" because there was no existing third-party servicing license in the first place.  Furthermore, the Defendants' unfounded reference to two cases from the Rhode Island Supreme Court concerning due process rights both concerned "renewal" of licenses within the State of Rhode Island and do not compare with the facts of this case where the statutes clearly required that Ocwen "*first obtain*" a third-party servicing license prior to conducting the foreclosures in question in violation of the Applicable Law provisions of the mortgage contracts.  [See Defendant's Objection at p. 6 citing Tillinghast v. Glocester, 456 A.2d 781 (1983) and Leone v. New Shoreham, 534 A.2d 817 (R.I. 1987) both concerning license renewals].  Normally the application of due process concerns a right or property that already exists and is taken away without notice or opportunity to be heard.  In this case Ocwen never had an existing third-party servicing license in which to claim such a right.  Therefore, the provisions of R.I.G.L. § 19-14-23(e) clearly allowed the DBR to issue the cease and desist emergency order against Ocwen's unlicensed third-party servicing activity and there is no existing statute that allowed the cease and desist to expire.

## CONCLUSION

Regardless of the Defendants' unfounded and incorrect arguments to the contrary, the fact remains that Ocwen conducted illegal foreclosures in Rhode Island without "first obtaining" a third-party servicer license in violation of R.I.G.L. § 19-15-3 and R.I.G.L. § 19-14-11.1.  These

violations occurred between July 1, 2015 through December 12, 2017.  The violations described above present breaches of the Applicable Law provisions of the mortgage contracts and breaches of the condition precedents to the Statutory Powers of Sale described in the language of the mortgage contracts which require that the mortgagee invoke the Statutory Power of Sale in accordance with or subject to Applicable Law.  The foreclosures are thus null and void.

>Respectfully Submitted,
>The Representative Plaintiffs,
>On behalf of themselves and all those
>So similarly situated
>By their Attorney,
>
>/s/ *Todd S. Dion*
>Todd S. Dion Esq. (#6852)
>15 Cottage Avenue, Suite 202
>Quincy, MA 02169
>401-965-4131 Phone
>401-270-2202 Fax
>toddsdion@msn.com

### CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2019, a copy of the foregoing document, filed through the CM/ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on the parties listed on the NEF as not receiving electronic notice.

>/s/ *Todd S Dion*
>Todd S. Dion