UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                )
ARTUR ANDRADE, et al.,          )
                                )
          Plaintiffs,           )
                                )
     v.                         )    C.A. No. 18-385 WES
                                )
OCWEN LOAN SERVICING, LLC, et al., )
                                )
          Defendants.           )
_____)
                                )
RICHARD L. LEMIEUX, et al.,     )
                                )
          Plaintiffs,           )
                                )
     v.                         )    C.A. No. 20-032 WES
                                )
OCWEN LOAN SERVICING, LLC, et al., )
                                )
          Defendants.           )
_____)
                                )
BRIAN N. PREBLE, et al.,        )
                                )
          Plaintiffs,           )
                                )
     v.                         )    C.A. No. 20-036 WES
                                )
OCWEN LOAN SERVICING, LLC, et al., )
                                )
          Defendants.           )
_____)
                                )
DANIEL M. DARROW,               )
                                )
          Plaintiff,            )
                                )
     v.                         )    C.A. No. 20-037 WES
                                )
OCWEN LOAN SERVICING, LLC, et al., )
                                )
          Defendants.           )
_____)
```

```
_____
                                )
ARSENIO M. PARRA, et al.,       )
                                )
        Plaintiffs,             )
                                )
    v.                          )    C.A. No. 20-040 WES
                                )
OCWEN LOAN SERVICING, LLC, et al., )
                                )
        Defendants.             )
_____)
                                )
KENNETH H. THEROUX, et al.,     )
                                )
        Plaintiffs,             )
                                )
    v.                          )    C.A. No. 20-063 WES
                                )
OCWEN LOAN SERVICING, LLC, et al., )
                                )
        Defendants.             )
_____)
                                )
JOSE LOZADA, et al.,            )
                                )
        Plaintiffs,             )
                                )
    v.                          )    C.A. No. 20-416 WES
                                )
OCWEN LOAN SERVICING, LLC,      )
                                )
        Defendant.              )
_____)
```

## MEMORANDUM AND ORDER

Plaintiffs in these seven cases allege that Defendant Ocwen Loan Servicing, LLC, in conjunction with other Defendants, breached Plaintiffs' mortgage contracts by foreclosing on their homes without a license to operate in Rhode Island. On Ocwen's unopposed motion, the Court consolidated these cases for the

limited purpose of determining whether Plaintiffs have asserted a viable claim for relief.  See Nov. 3, 2020 Text Order.  For the reasons that follow, Defendants' Motion to Dismiss all seven actions, ECF No. 17 in C.A. No. 20-040, is DENIED.

I.   BACKGROUND[1]

Rhode Island General Laws § 19-14.11-1(a) provides that, with certain exceptions, "[n]o person shall act as a third-party loan servicer, directly or indirectly, for a loan to a Rhode Island borrower without first obtaining a license."  During the years at issue in these cases, violations of the statute were criminally punishable.  R.I. Gen. Laws § 19-14-26 (2000).[2]  This licensing requirement went into effect on July 1, 2015.  See R.I. Public Laws 2014, ch. 487, § 3; R.I. Public Laws 2014, ch. 522, § 3. Ocwen did not obtain a license at that time.  Am. Compl. ¶ 78, ECF No. 13, Parra v. Ocwen Loan Servicing, LLC, C.A. No. 20-040.  On April 20, 2017, the banking division of the Rhode Island Department of Business Regulation ordered Ocwen to cease and desist from all unlicensed activity in the State of Rhode Island, including

---

[1] For the purposes of this Order, Plaintiffs' factual allegations are accepted as a true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[2] Subsequent to the events at issue, the statute was amended; current violations are subject to civil penalties, but not criminal ones.  See R.I. Public Laws 2019, ch. 226, § 1; R.I. Public Laws 2019, ch. 246, § 1.

activity as a third-party loan servicer.  Id. ¶ 79.[3]  Nonetheless, Ocwen continued to operate without a license, in violation of the state statute and the cease-and-desist order, through September 28, 2017.  Id. ¶¶ 79, 150-51, 153.

During the period of non-licensure (July 1, 2015 to September 28, 2017), Ocwen, acting as a third-party loan servicer, foreclosed on Plaintiffs' mortgages and sold their Rhode Island homes to third parties.[4]  Plaintiffs' mortgage contracts provided that the lender

---

[3] The Department of Business Regulation found that Ocwen had engaged in "acts or practices such that the Department was unable to conclude that [Ocwen had] demonstrated the financial responsibility, experience, character, and general fitness to warrant the belief that the company [would] be operated honestly, fairly, soundly, efficiently and in the public interest."  Consent Order ¶ 22(b), In re Ocwen Loan Servicing, LLC, DBR No. 17BK001, R.I. Dep't of Bus. Regulation (filed here at page 23 of ECF No. 1-3, Andrade v. Ocwen Loan Servicing, LLC, C.A. No. 18-385).  The Department's action was based in part on allegations by the Multi-State Mortgage Committee that Ocwen had committed "several violations of state and federal law, including, but not limited to: consumer escrow accounts that were unaudited and characterized by inaccurate, confusing and/or misleading escrow statements routinely sent to consumers, including numerous accounts where Ocwen failed to make timely disbursements to pay for taxes and insurance; ongoing unlicensed servicing activity by Ocwen subsidiaries in numerous jurisdictions; and Ocwen's significantly deteriorating financial condition."  Id. ¶ 19.

[4] See Am. Compl. ¶¶ 90, 97, ECF No. 22, Andrade, C.A. No. 18-385; Am. Compl. ¶¶ 41, 60, 77, 91, 94-95, 110, 126, ECF No. 11, Lemieux v. Ocwen Loan Servicing, LLC, C.A. No. 20-032; Compl. ¶ 25, ECF No. 1-1, Preble v. Ocwen Loan Servicing, LLC, C.A. No. 20-036; Am. Compl. ¶¶ 36, 54, 71, 88, 104, ECF No. 11, Darrow v. Ocwen Loan Servicing, LLC, C.A. No. 20-037; Am. Compl. ¶¶ 80, 99, 120, 137-38, 151, 153, 169, 186, 202, 218, 237, 254, 272, 293, 312, 329, 347, 363, 380, 398, 415, 432, 449, 466, 482, 499, 516, ECF No. 13, Parra, C.A. No. 20-040; Am. Compl. ¶¶ 39, 57, 74, 91, 109, 125, ECF No. 14, Theroux v. Ocwen Loan Servicing, LLC, C.A.

could conduct a non-judicial foreclosure under certain circumstances, but that the sale had to be conducted "in the manner prescribed by applicable law" and/or that the lender's statutory power of sale was subject to "applicable law."[5]

Plaintiffs contend that because Ocwen was unlicensed, the foreclosure proceedings did not comply with applicable law. See, e.g., Am. Compl. ¶ 84, Parra, C.A. No. 20-040. Thus, Plaintiffs allege, Defendants breached the mortgage contracts. See, e.g., id. Plaintiffs therefore seek a declaratory judgment stating that the foreclosures and subsequent sales to third parties are void. See, e.g., id. ¶ 573. They also allege that they are owed damages for "illegal servicing fees, loss of equity in their homes, money spent on funding bankruptcy, legal defense of foreclosure and eviction, and moving and relocation expenses[,]" as well as "loss of property interest, negative impact to credit ratings, loss of their homes, lost opportunities to rectify their situations through loss mitigation and mediation of their mortgage

---

No. 20-063; Am. Compl. ¶¶ 35, 62, 89, ECF No. 6, Lozada v. Ocwen Loan Servicing, LLC, C.A. No. 20-416.

[5] Am. Compl. ¶¶ 25, 41, Andrade, C.A. No. 18-385; Am. Compl. ¶¶ 32, 52, 69, 86, 102, 119, Lemieux, C.A. No. 20-032; Compl. ¶ 37, Preble, C.A. No. 20-036; Am. Compl. ¶¶ 27, 45, 63, 80, 96, Darrow, C.A. No. 20-037; Am. Compl. ¶¶ 72, 89, 108, 129, 145, 162, 178, 194, 210, 226, 245, 264, 282, 303, 321, 338, 355, 371, 389, 407, 424, 441, 458, 475, 491, 508, 550-51, Parra, C.A. No. 20-040; Am. Compl. ¶¶ 31, 48, 66, 83, 99, 118, Theroux, C.A. No. 20-063; Am. Compl. ¶¶ 26, 54, 81, Lozada, C.A. No. 20-416.

delinquencies, and extreme mental and emotional distress." Id. ¶¶ 526-27.  Most of the Plaintiffs seek to represent classes of similarly situated individuals.[6]

## II.  LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must determine whether the Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Factual allegations "that are merely consistent with a defendant's liability" are insufficient.  Id. (citation and quotations omitted).

## III. DISCUSSION

### A.  Cause of Action

Defendants first argue that Plaintiffs' complaints must be dismissed because the licensure scheme at issue does not create a private cause of action.  See Mot. to Dismiss 7-9, ECF No. 17, Parra, C.A. No. 20-040 ("Mot. to Dismiss").  This argument is a straw man, as Plaintiffs do not attempt to make out an implied statutory cause of action.  Rather, they claim breach of contract.

---

[6] See Am. Compl. ¶ 1, Andrade, C.A. No. 18-385; Am. Compl. ¶ 2, Lemieux, C.A. No. 20-032; Am. Compl. ¶ 2, Darrow, C.A. No. 20-037; Am. Compl. ¶ 2, Parra, C.A. No. 20-040; Am. Compl. ¶ 2, Theroux, C.A. No. 20-063; Am. Compl. ¶ 2, Lozada, C.A. No. 20-416. Preble, C.A. No. 20-036, is the exception.

See, e.g., Am. Compl. ¶¶ 2-3, Parra, C.A. No. 20-040. Thus, the cases cited by Defendants are inapposite. See Bonano v. E. Caribbean Airline Corp., 365 F.3d 81, 86 (1st Cir. 2004) (holding that Federal Aviation Act did not create an implied private cause of action); Pontbriand v. Sundlun, 699 A.2d 856, 868 (R.I. 1997) (holding that R.I. Gen. Laws § 19-14-2 did not create an implied cause of action where "a specific remedy exist[ed] for legal redress" under a different statutory provision).

B.   Voidness

Defendants next argue that, even if Plaintiffs' mortgage contracts were breached, the foreclosures are not void. See Mot. to Dismiss 9-13. This question has great significance. The voiding of foreclosures is an extreme remedy that, if available, could allow Plaintiffs to obtain relief without showing that Ocwen's lack of licensure caused them any harm. See Woel v. Christiana Tr. as Tr. for Stanwich Mortg. Loan Tr. Series 2017-17, 228 A.3d 339, 347 (R.I. 2020) (holding that failure to comply with notice requirement was actionable "regardless of the existence, or not, of prejudice to a particular mortgagor" (quoting Pinti v. Emigrant Mortg. Co., 33 N.E.3d 1213, 1223 n.20 (Mass. 2015)); see generally Pinti, 33 N.E.3d at 1225 (discussing distinction between void and voidable foreclosures).

This question appears to be one of first impression in Rhode Island. Moreover, as far as the Court is aware, this precise issue

is not the subject of any significant discussion in the case law of other jurisdictions.  On the one hand, it may be that Ocwen's lack of licensure divested it of the authority to foreclose, thus rendering the foreclosures void.  Cf. Mruk v. Mortg. Elec. Registration Sys., Inc., 82 A.3d 527, 537 (R.I. 2013) (stating that if foreclosing entity had not been transferred the mortgage, and therefore lacked authority to foreclose, the "foreclosure would be invalid, ineffective, or void"); U.S. Bank Nat. Ass'n v. Ibanez, 941 N.E.2d 40, 50 (Mass. 2011) ("One of the terms of the power of sale that must be strictly adhered to is the restriction on who is entitled to foreclose."); Pinti, 33 N.E.3d at 1218–19 ("[I]n light of the substantial power that the statutory scheme affords to a [mortgagee] to foreclose without immediate judicial oversight, we adhere to the familiar rule that one who sells under a power [of sale] must follow strictly its terms; the failure to do so results in no valid execution of the power, and the sale is wholly void.  This is true with respect to terms that are connected to the power of sale contained in the mortgage instrument itself, and to terms contained in § 21, the statutory power of sale, or in one of the statutes relating to the foreclosure of mortgages by the exercise of a power of sale to which § 21 refers." (internal citations and quotation marks omitted)); First Mortg. Co., LLC v. Dina, 11 N.E.3d 343, 348 (Ill. App. 2d Dist. 2014) ("The majority of states that have addressed

the enforceability of mortgages made by unlicensed mortgage lenders have concluded that they are void as against public policy and so unenforceable."); Finch v. LVNV Funding, LLC, 71 A.3d 193, 200 (Md. Spec. App. 2013) ("[A] complaint filed by an unregistered collection agency is a nullity, and any judgment entered on such a complaint is void. . . . [T]he imposition of criminal penalties for engaging in unlicensed collection activities establishes an intent by the legislature to void any judgment entered in favor of an unregistered collection agency." (citation and quotation omitted)).

On the other hand, Ocwen acted on behalf of lenders whose authority to foreclose is unchallenged. Therefore, Ocwen's lack of licensure may have been a "mere irregularit[y] in executing a power of sale" that should not affect the title of a bona fide purchaser. See Pinti, 33 N.E.3d at 1225 (quoting Rogers v. Barnes, 47 N.E. 602, 604 (Mass. 1897)); see also Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126, 1132 (11th Cir. 2014) ("[A] violation of a condition precedent to the power to accelerate and power of sale cannot, in and of itself, create contractual liability"); Pinti, 33 N.E.3d at 1220 ("[T]he plaintiffs correctly do not contend that to effectuate a valid exercise of a power of sale contained in a mortgage, a mortgagee must demonstrate punctilious performance of every single mortgage term."); Wells Fargo Bank, N.A. v. Bissonnette, CV146024874, 2016 WL 4530557, at *4 (Conn. Super.

July 29, 2016) ("The penalty for violations of these mortgage banking and brokerage statutes include a combination of restitution and disgorgement, and are within the jurisdiction of, and determined by, the Commissioner of Banking.  For any harm committed by an unlicensed mortgage broker, therefore, an individual would find their remedy before the Banking Commissioner pursuant to [Connecticut law.]").

Neither party presents a convincing argument regarding this question.  Defendants accurately note that the trilogy of Rhode Island cases holding foreclosures to be void based on non-compliance with mortgage terms all dealt with lenders' failure to comply with notice requirements.  See Woel, 228 A.3d at 345; Martins v. Federal Housing Finance Agency, 214 F. Supp. 3d 163, 169 (D.R.I. 2016); In re Demers, 511 B.R. 233, 238 (Bankr. D.R.I. 2014).  However, Defendants offer no argument for why the considerations underpinning those decisions do not apply equally here.  See Mot. to Dismiss 12-13.

Conversely, Plaintiffs point to cases in which courts have held that non-compliance with foreclosure requirements other than notice provisions constitutes a breach of contract.  However, almost all of those decisions required the plaintiffs to show actual damages based on the breach, thus undermining Plaintiffs' position here.  See Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126, 1133 (11th Cir. 2014) ("[B]ecause [plaintiff] has failed to

put forward any evidence of damages caused by the purported breach of these contract terms or seek any cognizable relief, we conclude that summary judgment properly was granted . . . ."); Dan-Harry v. PNC Bank, N.A., C.A. No. 17-136 WES, 2018 WL 1083581, at *2 n.3 (D.R.I. Feb. 27, 2018) ("While claims based on the mortgagee's failure to comply with the 24 C.F.R. § 203.604(b) face-to-face meeting requirement sometimes founder at the summary judgment phase because of the difficulty of demonstrating actionable damages, whether this case will suffer a similar fate is beyond the scope of this report and recommendation." (citation omitted)); Dan-Harry v. PNC Bank, N.A., C.A. No. 17-136 WES, 2019 WL 1253481, at *2 (D.R.I. Mar. 18, 2019) (granting summary judgment where the plaintiff "failed to offer proof of damages caused by the [d]efendant's alleged breach of contract"); Njema v. Wells Fargo Bank, N.A, 124 F. Supp. 3d 852, 856 (D. Minn. 2015) (same). But see Wells Fargo Bank, N.A. v. Cook, 31 N.E.3d 1125, 1131-32 (Mass. App. 2015) (vacating summary judgment for the defendant and stating that failure to comply with face-to-face meeting requirement incorporated into mortgage through HUD regulations would render foreclosure void). As such, the Court remains unconvinced by either side.

As explained below, Plaintiffs have adequately pled damages and causation of a more typical nature. Therefore, even if Plaintiffs lose the legal debate regarding whether compliance with

applicable law is a condition precedent whose breach voids foreclosure, Plaintiffs could nevertheless succeed in establishing liability. The Court therefore declines to wade into these turbulent waters at this nascent stage of litigation. See Doe v. U.S. Dep't of Justice, 753 F.2d 1092, 1104 (D.C. Cir. 1985) ("[I]t need not appear that the plaintiff can obtain the specific relief demanded as long as the court can ascertain from the face of the complaint that some relief can be granted.").

C.   Causation

Putting aside the above-mentioned circumstances in which a foreclosure may be rendered void, a plaintiff in a typical breach-of-contract action must prove that (1) a contract existed, (2) the defendant breached that contract, (3) the plaintiff sustained damages, and (4) the defendant's breach caused the plaintiff's damages. See Fogarty v. Palumbo, 163 A.3d 526, 541 (R.I. 2017). Plaintiffs easily meet the first three requirements. They have plausibly alleged that Defendants breached the mortgage contracts by foreclosing on Plaintiffs' homes via an unlicensed servicer. Moreover, it is indisputable that Plaintiffs suffered damages through the foreclosures and associated fees. However, Defendants argue that the fourth requirement, causation, is lacking because the foreclosures and fees were "the natural and foreseeable consequences of the Plaintiffs' own breach of the mortgage through default on the loan." Mot. to Dismiss 14. The Court disagrees.

Defendants' argument assumes, to its detriment, that the foreclosures were inevitable.  Defendants ask the Court to presume that, had Ocwen not foreclosed on Plaintiffs' mortgages without a license, Ocwen would have foreclosed with a license, requiring the further conjecture that Ocwen could have received a license during this two-plus-year period of non-licensure.  Alternatively, Defendants' argument may be premised on the assumption that, had Ocwen not effectuated the foreclosures, entities that were in compliance with the Rhode Island licensing requirements would have done so instead.  Moreover, Defendants presume that these counterfactual foreclosures would have occurred on the same timelines as the foreclosures that actually occurred.  (The loss of even a brief period in one's home can constitute an injury.) Lastly, Defendants take for granted that the fees imposed by Ocwen would have been imposed, in full, by another foreclosing entity. For these reasons, Defendants' argument falls outside of the scope

of a motion to dismiss.[7]  Thus, the Court concludes that Plaintiffs

have plausibly alleged claims for breach of contract.[8]

IV.  CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss,

ECF No. 17 in C.A. No. 20-040, is DENIED as to all seven above-

captioned matters.  These matters will remain consolidated for

administrative purposes.


IT IS SO ORDERED.

WEsmith
_____
William E. Smith
District Judge
Date:  May 25, 2021


---

[7] The two cases cited by Defendants are inapt because they do not address pre-discovery dismissals.  See Mot. to Dismiss 13.  In each case, the defendants prevailed at summary judgment or trial because the plaintiffs had failed to offer sufficient proof of damages or causation.  See Barkan v. Dunkin' Donuts, Inc., 627 F.3d 34, 40 (1st Cir. 2010) (affirming judgment as matter of law where the plaintiff failed to show causation); Petrarca v. Fid. and Cas. Ins. Co., 884 A.2d 406, 409, 412 (R.I. 2005) (affirming summary judgment where the plaintiff failed to prove damages).

[8] The Court has already held as such in one of the seven instant cases.  See Sept. 24, 2019 Order 2, ECF No. 33, Andrade, C.A. No. 18-385 ("Plaintiffs state a plausible breach of contract claim, as '[i]t does not take a leap of logic to conclude that a mortgagor who engages an unlicensed loan servicer to effectuate a foreclosure is not acting in a manner prescribed by applicable law.'" (quoting R. & R. 6, ECF No. 20, Andrade, C.A. No. 18-385)).